WOOLDRIDGE
*vs*
LUCAS, &c.

Fines for two distinct offences of retailing, tho' proved, cannot be imposed where only one is charged.

---

# Wooldridge *vs* Lucas, &c.

## ERROR TO THE RUSSELL CIRCUIT.

### *Forfeitures. Felons.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

TROVER.

Case 15.

September 23.

Case stated.

The plaintiff brought an action of trover for a female slave, against the defendants, and after two trials before a jury and a failure to find a verdict upon issues joined, the case was submitted to the Court upon the following agreed facts, in substance: that the plaintiff was indicted, tried, convicted, and sentenced to a confinement in the Penitentiary for two years, for felony; that he was pardoned and discharged before the expiration of his term; but before his pardon and discharge, one of his sons sold the slave in question, which before his conviction was his property, to the defendants. Upon these agreed facts the parties submitted the case to the judgment and decision of the Court, upon the following terms; that if the Court should be of opinion that the law was for the defendant, judgment was to be rendered for him, and if for the plaintiff, then the facts were to be submitted to a jury upon all the grounds of defence relied on by the defendants.

The Court gave judgment against the plaintiff, and he has appealed to this Court.

Judgment of the Circuit Court.

The case involves the construction of the 20th section of the 10th article of the constitution of Kentucky, and of the two acts of the Legislature, the one passed in

The 20th sec. of the 10th art. of the constitution abrogates so

WOOLDRIDGE
*vs*
LUCAS, &c.

much of the common law forfeiture as affects the inheritance, leaving it in force only as relates to the estate for the life of the offender.

The provision of the statute of 1796, the 43d and 44th secs.

By the statute of 1802, (*St. Law,* 1309,) the estate of felons is not to be forfeited, but the wife's

1796, (1 *Stat. Laws,* 531,), the other passed in 1802, (2 *Stat. Laws,* 1309.) The 20th section of the constitution provides, "that no attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth." This section abrogates so much of the common law forfeiture upon conviction, as affects the inheritance, leaving in force so much of the same as operates upon the estate during the life of the offender.

The 43d and 44th sections of the act of 1796, *supra,* provides that "whensoever any person shall happen to be attainted, convicted, or outlawed for any treason, misprison of treason, murder or felony whatever, there shall be, in no case, a forfeiture to the Commonwealth, of dower, of lands or personal estate, but the same shall descend and pass in like manner as by law directed in case of persons dying intestate, nor shall any attainder work a corruption of blood, any law or usage to the contrary notwithstanding. Saving to all and every other person and persons, bodies politic and corporate, their heirs, successors, and to every of them, (other than to such offender that shall be attainted, convicted or outlawed,) all such right, title, interest, entry, lease, possession, condition, profit, commodity and hereditaments, as they or any of them had, or should, or of right ought to have before or at the time of said conviction or outlawry."

If these sections stood alone and unaltered by the provisions of the statute of 1802, they might properly be construed as a surrender of the forfeiture, to which the Commonwealth was entitled during the life of the offender, to the wife and children or those who would be entitled to the estate in case of his dying intestate, and as well in cases where the punishment of the offence was a confinement for a term of years in the Penitentiary, as when the punishment was death.

But the Legislature takes up the subject, in the fifth section of the act of 1802, *supra,* and provides a different mode for the disposition of the property of a convict confined for a term of years, variant from and inconsistent with the disposition of it, made by the sections quoted of

the previous act, and must be regarded as modifying and changiug the said sections, in this class of cases. It provides that "where any person shall be sentenced to confinement in the Penitentiary for any term exceeding one year, it shall be lawful for the wife of such person to apply to a Court of chancery for *alimony*, in the manner prescribed by the act concerning alimony; and the Court to whom application is made, shall, on the production of the copy of the record of the District Court, decree *alimony*, as in other cases. The infant children of such convict, shall, for and during the time of his confinement, be regarded as orphans, and shall have guardians appointed to them by the Court of the county, and may be bound apprentices; and the whole proceedings, both with regard to them and the estate, shall be such as are directed by the act concerning guardians, infants, masters and apprentices, passed in the year 1797. During the period of the confinement of any convict in the Penitentiary, he shall be liable to be sued as if he never had been convicted, by a copy of the writ, &c., being delivered to the keeper, &c. &c., and in all other respects the same proceedings shall be had against *his estate* as against that of other persons. And every convict confined in the Penitentiary, shall have power, by his or her last will and testament in writing, to devise *his* or *her* estate, in the same manner as if he or she had never been convicted; and on his dis. charge therefrom, *his* estate, or so much thereof as has not been *legally disposed of, shall revert* to him again." Numerous clauses in this section show that the Legislature did not intend to deprive a convict for a term of years, of his right and title to his estate, even during his confinement in the Penitentiary, much less during his life to give it to his wife and children as in cases of intestacy; but to allow to them the use, issues and profits of the same, subject to the payment of his debts, for which latter purpose it might be sold and disposed of, by a proceeding against *him* as *his* estate. And he was authorized to *devise* it, as his estate, *in the same manner* as if he *had not been convicted.*

*Alimony* imports a provision for the *support* of the wife out of the *profits* of the estate of her husband, the allow-

*Margin notes:*

WOOLBRIDGE
*vs*
LUCAS, &c.

*right to alimony, and the right of the children to support, and of creditors, is recognized; and the right of the offender after release from imprisonment, of what has not been disposed of to either of these purposes, is complete.*

The provision of the statute of 1802, for alimo--

Woolbridge
vs
Lucas, &c.

ny to the wife of
a convicted fel-
on, is repugnant
to the idea, that
upon the convic-
tion of the hus-
band, a right to
dower became
complete.

—And the pro-
vision for the ap-
pointment of
guardian to the
infant children of
such felon, is re-
pugnant to the
conclusion that
the right of the
father, upon his
conviction of fel-
ony, descend to
the children, as
if he had died
intestate; and so
is the provision
that his estate
shall revert to
him upon his re-
lease.

ance to be regulated according to the value of the estate. If the wife was entitled to her dower and distributable portion of the estate, as in cases of intestacy, it can scarcely be believed that the Legislature would have made the provision for her recovery of alimony, by a proceeding against the husband as in other cases. If the estate was in the husband, then there was propriety in the provision, but if an interest was in the wife as great or greater than she would be entitled to recover, then there was no necessity or propriety in the provision.

So with respect to the minor children, guardians may be appointed for them, who are to be governed by the act of 1797, by which act they have no power to sell their estate, especially lands and slaves, but to apply the issues and profits only to their support, and if it will not suffice, to bind them out as apprentices. And the power is given to the convict in the Penitentiary, to dispose of his estate by will, in the *same manner* as if he or she had *never been convicted;* and on his discharge *his estate,* or so much thereof as has not been *legally disposed of,* shall revert to him again. If the title to the estate passed to the wife and children during the life of the convict, how could he devise it by will? He might, it is true, as decided by this Court in the case of *Rankins' heirs* vs *Randins' executors,* (6 *Monroe,* 535,) devise the remainder of the fee, after his death, but such power of devise can scarcely be regarded as a power to devise *his* or her *estate* in the *same manner* as if he or she had *never been convicted.* And how can the estate revert to the convict upon his discharge, if it was intended to pass to the wife and children during his life? These clauses are opposed to the idea that the estate and title was to pass and be vested in the wife and children, or others, as in the case of dying intestate, as directed by the sections quoted in the act of 1797, and clearly indicate an intention on the part of the Legislature, to permit all right and title in the estate, to remain with the convict, subject to the payment of his debts and the use and support of the wife and children during his confinement, and no longer.

But it is insisted that as so much of the estate only is to revert to him, as has not been *legally disposed of,* and

as the slave in contest was disposed of before the plaintiff's pardon or discharge, that she does not revert to the plaintiff. This argument pre-supposes that the right and title to the slave were in the children, and that they had a right to sell. We have shown that no such right or title was intended by the last act to pass to them; nor is any express *power given* to them to *sell* or dispose of the property by the last act, nor can any such power be implied, but the contrary may be fairly implied. The section provides a mode by which the property of a convict may be *legally disposed of*, namely, for the payment of debts, and to that mode should the language of the statute be construed to apply, or to some other mode of legal disposition, by a regular and authorized proceeding in a Court of chancery or law. The words "legally disposed of," are fully satisfied by such an application, without extending them to embrace a disposition made by the children, which is unauthorized by the whole tenor of the section.

The judgment of the Circuit Court is, therefore, reversed, and cause remanded, that a new trial may be granted and further proceedings had.

*B. & A. Monroe* for plaintiff; *Harrison, Bodley & Hunt* for defendants.