## Hunt *versus* Wall *et al.*

1. Land was sold by parol by a married woman; the purchaser went into possession in 1835; in that year she died. The husband died in 1863; the purchaser and those claiming under him held adverse possession until 1870, when ejectment was brought by the heirs of the wife. *Held*, that the possession having continued for more than thirty years, the Act of April 23d 1856, sect. 1, was a bar.

2. Under the Act of 1856, there is no exception for persons under disabilities.

3. The Acts of March 26th 1785 and April 23d 1856, compared and construed.

March 11th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Wyoming county*: No. 185, to January Term 1874.

This was an action of ejectment for 50 acres of land in Falls township, Wyoming county, commenced June 18th 1870, by Dennis Wall and others against Stephen Hunt.   The plaintiffs were heirs at law of Celinda Hubbard, formerly Headley, deceased.

The land in dispute was part of a tract of 329 acres, surveyed to Robert Taylor and patented to· John Ewing.   150 acres of the tract through a tax sale became the property of Samuel Headley, on the 16th of June 1827.   February 18th 1831 he devised 50 acres, the land in dispute, to his daughter Celinda Hubbard (above named), then the wife of Sylvester Hubbard.   Mrs. Hubbard, her husband being still living, sold 25 acres of the tract to James W. Quince, who entered into possession.   She died in 1835.   In 1843 a judgment was recovered against Quince; in May 1844, Quince sold his title to L. H. Gulick, subject to the judgment. And it was sold by the sheriff under that judgment in October 1848 to John Sickler.   On the 6th of August 1857 Sickler conveyed to Stephen B. Hunt.   Sylvester Hubbard, the husband of Celinda Hubbard, died in 1863.

There was evidence that Quince and those who claimed under him had held adverse possession of the land from the sale to him by Mrs. Hubbard up to the issuing of the writ in this case, when Hunt, the defendant, was in possession.   These facts appeared in evidence on the trial of the case, November 25th 1873, before Elwell, P. J.

The court charged : * * *

" It would appear from the testimony on the part of both the plaintiff and the defendant, James Quince went into possession under a purchase by parol from Mrs. Hubbard, then a married woman. This purchase was of twenty-five acres—part of the fifty owned by Mrs. Hubbard.

" Mrs. Hubbard's contract not being in writing, nor acknowledged in the manner required by law, gave to James Quince no title nor

[Hunt *v*. Wall.]

legal right of possession to any part of the land. The contract, as proved either by the evidence of the plaintiff or that of the defendant, is not a bar to the right of plaintiff to recover.

"It appears by the undisputed evidence, that Mrs. Hubbard died in 1835 and that her husband, Sylvester Hubbard, died in 1863, about seven years before the bringing of this suit. When Mrs. Hubbard died her husband became tenant by the curtesy, and had the right of entry and possession during his life. The heirs of Celinda Hubbard, during that period, could not maintain an action for the recovery of the possession, and, therefore, from 1835 to 1863 the Statute of Limitations was suspended and did not operate to bar the rights of the plaintiffs.

"The statute of 22d April 1856, in order to have a reasonable construction, must be held to be a bar after thirty years, during which the parties having the title might assert their right of possession. But if it is to have the effect of a bar in all cases, whether reversioners or remainder-men have the right of entry or possession or not, the Supreme Court should be the first to give it that construction.

"I therefore instruct the jury that, under the undisputed evidence as to the time of the death of Celinda Hubbard and of her husband, the Statute of Limitations is not a defence against the legal title of the plaintiff, if you believe the evidence as to location."

The verdict was for the plaintiffs.

The defendants removed the record to the Supreme Court, and, amongst others, assigned for error, that the court erred in charging that the plaintiffs were not barred by the Statute of Limitations.

*W. M. Piatt, J. U. Piatt* and *E. W. Smith,* for plaintiff in error, cited Henry *v.* Carson, 9 P. F. Smith 301 ; Act of April 23d 1856, sect. 1, Pamph. L. 532, 2 Br. Purd. 930, pl. 13 ; Stoolfoos *v.* Jenkins, 8 S. & R. 175 ; Pratt *v.* Eby, 17 P. F. Smith 402.

*I. A. Sittser, W. E. Little* and *C. A. Little,* for defendants in error, cited Marple *v.* Myers, 2 Jones 122 ; Hall *v.* Vandegrift, 3 Binn. 374 ; Carlisle *v.* Stitler, 1 Penna. R. 6 ; Gernet *v.* Lynn, 7 Casey 94 ; Crow *v.* Knightlinger, 1 Id. 343 ; Henry *v.* Carson, 9 P. F. Smith 297.

The opinion of the court was delivered, May 11th 1874, by

MERCUR, J.—This was an action of ejectment brought by the heirs of Celinda Hubbard. The land in question was devised to her in 1831 ; she was then the wife of Sylvester Hubbard, and so continued to the time of her death in 1835. During this interval of time, she sold, by a parol contract to one Quince, twenty-five acres thereof. During her life, Quince took possession of the land so purchased, and perhaps of all the land in controversy. The ·

[Hunt v. Wall.]

possession then taken by Quince was continued by him, and by persons claiming under him, without interruption down to the commencement of this suit. It was then held by the plaintiff in error. The summons issued in June 1870. The sale made by Mrs. Hubbard being invalid by reason of her coverture, the Statute of Limitations was interposed as a bar to a recovery by the heirs. It appears that Sylvester Hubbard survived his wife and died in 1863 ; the heirs claim they had ten years after the death of Sylvester in which to bring their suit, and that the adverse possession commenced during the life of their mother, was no bar to their recovery. The court below adopted this view of the law ; this construction of the statute is assigned as error, and is the main point in the case.

The 2d section of the Act of 26th of March 1785, Purd. Dig. 927, pl. 3, declares, " that no action to recover lands, can be maintained by any person, unless brought within twenty-one years after his or her right or title to the same first descended or accrued." It contains no exception in favor of persons who may be under legal disabilities. Minors and *feme coverts* are thereby given no longer time than any other persons ; the rights of all are equally barred at the expiration of twenty-one years. The 4th section of said act excepts persons under legal disabilities, from the restricted application of the second section. It provides, " that if any person or persons having such right or title be or shall be, at the time such right or title first descended or accrued, within the age of twenty-one years, *feme covert, non compos mentis,* imprisoned, * * * then such person or persons, and the heir or heirs of such person or persons, shall and may notwithstanding the said twenty-one years be expired, bring his or their action, or make his or their entry, as he, she or they might have done before the passing of this act, so as such person or persons, or the heir or heirs of such person or persons, shall within ten years next after attaining full age, discoverture, soundness of mind, enlargement out of prison, * * * take benefit of or sue for the same, and no time after the said ten years. And in case such person or persons shall die within the said term of ten years under any of the disabilities aforesaid, the heir or heirs of such person or persons, shall have the same benefit that such person or persons could or might have had by living until the disabilities should have ceased or been removed." It was said in Henry v. Carson, 9 P. F. Smith 297, that the correct interpretation of the phrase " die within the said term of ten years" is to read it "inside of not overstepping before the commencement of the said term of ten years." Thus it will be observed all the exceptions which extend the right of action beyond the twenty-one years, are confined to persons, and the heirs of persons, who were under legal disabilities when the right or title, under which they claimed, first descended or accrued. If the right or title was first

25 P. F. SMITH—27

[Hunt *v.* Wall.]

acquired by a person while under either of said disabilities, then such person notwithstanding the twenty-one years had thereafter expired, might, within ten years after the disability was removed, maintain his action. If such first acquirer died·under any of said disabilities, then.the heir or heirs of the one so dying, was given the same length of time in which to bring suit, as the said acquirer would have had by living until the disability was removed.

As the heirs of Celinda Hubbard had no right to the possession, and could not maintain ejectment, during the life of Sylvester Hubbard, they would have had, under this section, ten years after his death in which to bring suit : Carlisle *et al. v.* Stitler, 1 P. R. 6 ; Marple *et al. v.* Myers, 2 Jones 122 ; Henry *v.* Carson, *supra.*

Has subsequent legislation so changed the law as to bar their right of action ?

Two Acts of Assembly restricting the operations of this 4th section have been passed.

The 15th section of the Act of 14th April 1851 (Purd. Dig. 929), pl. 8, declares, " from henceforth no person or persons whatsoever shall make entry into any manors, lands, tenements or hereditaments, after the expiration of forty years next after'his, her or their right or title to the same first descended or accrued ; nor shall any person or persons whatsoever have or maintain any writ of right or any other real or personal writ or action for any manors, lands, tenements or hereditaments of the seisin or possession of him, her or themselves, his, her or their ancestors or predecessors, than within forty years next before such writ, action or suit so hereafter to be sued, commenced or brought." The 7th section of the Act of 4th May 1852, declares that the aforesaid 15th section shall be " construed to extend to, and apply only to writs of right and other writs pertaining to manorial lands in the city and county of Philadelphia." The next act, that of 22d April 1856 (Purd. Dig. 930, section 1, pl. 13), declares "no exception in any Act of Assembly respecting the limitation of actions in favor of persons *non compotes mentis*, imprisoned, *femes covert* or minors, shall extend so as to permit any person to maintain any action for the recovery of any lands or tenements, after thirty years shall have elapsed since the right of entry thereto accrued to any person within the exceptions aforesaid." It is entitled " An Act for the greater certainty of title and more secure enjoyment of real estate." Under the 4th section of the Act of 26th March 1785, an exclusive and adverse possession of more than fifty years might give an uncertain title. A coverture extending to an advanced age might be followed by ten succeeding years before the holder of a title by adverse possession would be quieted in his estate. The title remained uncertain for an indefinite number of years. The Act of 1856 makes the limitation of time fixed and definite. It declares a lesser number of years shall mark the ultimate limits of time

[Hunt *v.* Wall.]

within which the rights of persons under the disabilities named can be asserted by law.   The intent is most manifest.   The language is clear and explicit.   It admits of one construction only.   It strikes at all previous laws, which excepted persons under disabilities, from the operation of the 2d section of said Act of 1785.   It does not entirely repeal the 4th section. but modifies it.   It designates thirty years as the longest period within which such a person can successfully prosecute his claim.   That is the bound beyond which neither *feme covert* nor minor can pass without loss of title.

. We think therefore the learned judge erred in charging that the Statute of Limitations constituted no defence, and the fourth assignment is sustained.   We discover no merit in the other assignments.

Judgment reversed, and a *venire facias de novo* awarded.