And in State v. Hanks, 39 La. Ann. 234, 1 South. 458, it was held that:—

"The ownership of a particular person is not an essential ingredient of the crime of larceny, which is simply the felonious taking and carrying away of the personal goods of another; and even if the owner be unknown, the offense may be properly charged and sustained. The essential facts constituting the crime of larceny of a particular, specified horse are not in any manner, affected by the question whether the horse was the property of Sevigne Duhon or of Cecile Duhon. It is sufficient if the horse was the property of another. The *identity* of the horse charged to have been stolen is the important thing in determining whether the offense proved is the offense charged."

See, also, Bishop's New Criminal Procedure (Ed. 1896) vol. 2, § 721; also, section 726, No. 2; Commonwealth v. McLaughlin, 103 Mass. 435.

So we hold there is sufficient in the record relating to the ownership and possession of the jewelry to sustain this conviction, without taking into consideration the Judge's action in ordering the stenographic report of Mrs. DeGaham's testimony corrected so as to show more fully what the Judge affirmed

and the District Attorney testified to, viz.:— that she had stated the property was hers individually—something omitted inadvertently by the stenographer.

The second bill of exceptions relates to the Judge's refusal to grant a new trial on the ground of newly discovered evidence. Three witnesses were produced and sworn and gave the testimony which is that referred to as newly discovered evidence.

The Judge states the motion was refused, because the evidence offered as newly discovered evidence was not newly discovered; that the facts intended to be proved were known to the accused long before the trial; that it was shown he was intimate with the witnesses who are relied on to give the newly discovered evidence; and that he well knew before his trial they were cognizant of the facts which he now sets up as newly discovered evidence.

There is an abundance of material in the record to satisfy us that this appreciation of the situation by the Judge was correct.

It is ordered that the verdict, sentence and judgment appealed from be affirmed.

---

(34 South. 332.)

No. 14,290.

MEYER v. MOSS (MARCUS et al. Interveners). In re BLOCH & BRO. NATIONAL CITIZENS' BANK v. MOSS.*

(Nov. 17, 1902.)

PLEDGE—EVIDENCE — REVOCATORY ACTION — VENUE — PRESCRIPTION — INTERRUPTION — INTERVENTION—RIGHTS OF SUBPLEDGEE— RES JUDICATA—ACTION BY WIFE—ESTOPPEL.

1. On the issues whether there was an indebtedness, and whether the delivery of certain mortgage notes was by way of pledge to secure the said indebtedness or by way of an accommodation lending, *held*, that a contemporaneous written promise to deliver the notes as collateral is very strong corroborative evidence of there having been a debt, and of the delivery having been by way of pledge.

2. The revocatory action to set aside a pledge of mortgage notes may be brought in the court within whose jurisdiction the pledgor and the mortgaged property are found, though the pledgee resides in another state, and keeps the notes in such other state.

3. The prescription of such revocatory action

is one year, and is not suspended by the principle of "Contra non valentem agere non currit præscriptio."

4. When after one year the pledgee of mortgage notes brings suit to enforce payment, and a creditor of the pledgor institutes the revocatory action by means of an intervention in the suit, and the prescription of one year is pleaded against the revocatory action so instituted, such prescription cannot be obviated by the invocation of the principle, "Quæ temporalia sunt ad agendum perpetua sunt ad excipiendum." The pledgee has been in possession of the object pledged, and the intervener and his debtor, the pledgor, have been out of possession, and the principle quæ temporalia can be invoked only by the party in possession as against the party out of possession.

5. Besides, the term of one year fixed by law within which the revocatory action may be brought is not a prescription, properly speaking, but is a condition attached to and controlling the grant of the action; and the course of such term is not interrupted or suspended by the causes which suspend or interrupt ordinary prescription.

The case of Marshall v. Grand Gulf R. Co., 12 Rob. 198, is overruled.

6. A subpledge of mortgage notes that pass by delivery, and that were subpledged before maturity, in good faith, in due course of business, brought suit and obtained judgment against the principal pledgor, who was also the debtor on the notes. Afterwards the pledged notes, now merged in judgment, returned to the principal pledgee, and, he seeking to execute the judgment, the pledgor, also debtor in judgment, set up that the notes had not been pledged, but merely loaned for accommodation. By way of rejoinder, the pledgee pleaded res judicata, and the prescription of one year applicable to actions in nullity of judgment. Held, first, that the defense based on the conditions on which the notes had been delivered to the pledgee could not have been set up in the suit of the subpledgee, who had acquired before maturity and in good faith, for valuable consideration, and that as a consequence the judgment in that suit is not res judicata of such defense; second, that to contest the pledgee's title to the judgment as owner or as pledgee is not to bring an action in nullity of the judgment, but is to raise an issue dehors the judgment.

7. By subpledging and redeeming the subpledge, the pledgee does not acquire a new title to the pledged property, but merely continues his same tenure.

8. The husband's property was sold at partition sale. Afterwards the wife acquired the property by purchase from the adjudicatee. Then she brought suit to have the mortgages transferred to the proceeds, and cited the actual holders of the mortgage notes; alleging these actual holders to be owners. The husband joined in the petition to authorize his wife. There was judgment referring the mortgages to the proceeds. When the alleged owners of the notes sought to compel the sheriff to make payment to them as owners of the notes, the husband denied that they were owners, and thereupon the said alleged owners met his denial by a plea of estoppel, based on the allegations made in the suit to have the mortgages transferred. Held, the suit was the wife's not the husband's, the allegations were hers, not his; because of his private dispute with the actual holders of the notes he could not block the suit of his wife by refusing to authorize it, and he could not inject his own litigation in her suit; and, as a consequence, there is no estoppel.

9. The pledgee does not, as against the pledgor, lose possession of the pledged property by making a subpledge of it.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Tensas; J. L. Dagg, Judge.

Action by Adolph Meyer against Hartwig Moss for partition. Judgment for plaintiff. Rule by S. E. Bloch & Bro. on the sheriff to show cause why proceeds of the partition sale should not be paid to them. Action by the Citizens' National Bank against Hartwig Moss to revive a judgment. The actions were consolidated, and from the judgment defendant in the rule and G. Marcus and husband, interveners, appeal. Affirmed.

Henry Denis and Boatner, Dodds & Boatner, for appellant sheriff. Young & Young and Bernard Titche, for appellants Marcus. Hugh Tullis, for appellee Young. Samuel Lucius Elam, for appellees S. E. Bloch & Bro.

PROVOSTY, J. In the 80's there was at Waterproof, Tensas parish, La., a commercial firm of Hartwig Moss & Co.; also at St. Louis, Mo., a commercial firm of Charles Moss & Co. The former firm was composed of Hartwig Moss, Charles Moss, and William Moss, brothers. The latter firm was composed of Charles and Hartwig Moss. At the same time there was in New York City, the plaintiff firm, S. E. Bloch & Bro., then composed of Samuel E., Solomon M., and Henry Bloch, brothers, but now composed of the first and second named, only.

In 1887 the St. Louis firm, Charles Moss & Co., failed, and drew in its fall the Louisiana firm, Hartwig Moss & Co. At the time of this failure there was outstanding of the paper of Hartwig Moss & Co. $23,155.70. One half of this was represented by three notes; the other half, by four drafts. The three

notes were notes of Hartwig Moss & Co. to the order of Charles Moss & Co., indorsed over by the latter to S. E. Bloch & Bro., and negotiated by these last to third parties in due course of business. The four drafts were drafts by Hartwig Moss & Co. to their own order on S. E. Bloch & Bro., accepted by the latter, and indorsed over by Hartwig Moss & Co. to Charles Moss & Co., and by the latter negotiated in due course of business.

Two of these notes were dated May 18, 1887, and were for $2,587.90 and $2,614.45, respectively; and fell due, the former on October 15, 1887, and the latter on November 1, 1887. The third was dated July 23, 1887, and was for $6,375, and fell due four months after date.

Two of these drafts were dated May 18, 1887, and were for $2,587.90 and $2,614.45, respectively, and were payable, one on October 15, 1887, and the other on November 1, 1887; and the two others were dated July 23, 1887, and were for $2,625 and $3,750, respectively, and were payable four months after date.

In dates, amounts, and maturities, these notes and drafts corresponded exactly. Two of the notes corresponded with two of the drafts, were made on the same date, for like amounts, and matured on same date. The remaining two drafts together, and the third note, were for like amount, were made on the same date, and matured on same date.

As the indorsers and acceptors of this paper, the firm of S. E. Bloch & Bro. would have to take it up at its maturity.

In view of this liability, which was threatening their house with disaster, the three Blochs sought out Hartwig Moss to try to induce him to do something for them. They met him by appointment at the Burnet House in Cincinnati, Ohio, and he, in their presence, wrote and delivered to them the following letter:

"Cincinnati, Ohio, October 30th, 1887. Messrs. S. E. Bloch & Bro., New York—Dear Sirs: Mr. Samuel Bloch of S. H. & E. Bloch of Cleveland, Ohio, holds $15,000.00 mortgage notes on a $25,000.00 mortgage given to Marcus in August, 1884. I will see him and get him to forward these papers to you as collateral. I shall leave nothing undone in my power to force him to do so and aid you in every way possible to defeat his pretended claim thereto. Yours truly, [signed] Hartwig Moss."

From Cincinnati the parties went to Waterproof, La., and there met the Samuel Bloch, of Cleveland, mentioned in the letter; and, after a day or two of conference, three mortgage notes, representing the $15,000 notes mentioned in the letter, were delivered as per the letter.

The mortgage notes in question were made by Hartwig Moss to his own order, and were by him indorsed in blank. They were dated August 20, 1884, and were secured by mortgage on Hartwig Moss' two-thirds interest in the Moss Grove plantation, situated in the parish of Tensas. The mortgage was stipulated in favor of Michael Marcus, of Cincinnati, Ohio, and of the future holders of the notes.

Very shortly after the mortgage notes had been placed in their hands, S. E. Bloch & Bro., in due course of business, pledged one of them to the Citizens' National Bank of New York City. The bank at the maturity of the note brought suit on it against Hartwig Moss, and on the 23d of April, 1888, obtained a judgment. S. E. Bloch & Bro., in due course of business, paid to the Citizens' National Bank the debt for which the note, now merged into a judgment, was pledged, and the note returned to them.

The owner of the other one-third interest in the Moss Grove plantation brought a partition suit against Hartwig Moss, and in due course the plantation was sold to effect a partition. This partition suit is the one which has given title to the present litigation, viz., Adolph Meyer v. Hartwig Moss. The sale took place in June, 1888, and was for cash.

In the October following, Mrs. Rosa Moss, wife of Hartwig Moss, who had in the meantime bought the property from the adjudicatee at the partition sale, brought suit against the clerk of court and the apparent holders of the mortgage notes to show cause why the mortgage should not be referred to the proceeds of the sale in the hands of the sheriff; and in January, 1892, a judgment was rendered accordingly.

For the purpose of authorizing his wife, Hartwig Moss joined in this suit as party plaintiff. In the petition it was alleged that S. E. Bloch & Bro. owned one of the said

mortgage notes, and the Citizens' National Bank another, and one John Twohy the third. By amended petition it was alleged that not S. E. Bloch & Bro., but S. E. Bloch, held the note.

At the time of the discomfiture of the firm of Hartwig Moss & Co., Mrs. Michael Marcus, who, by the way, is a sister of Mrs. Hartwig Moss, brought suit, accompanied by attachment, against Hartwig Moss & Co., and obtained judgment. In January, 1898, she caused execution to issue, and the proceeds in the hands of the sheriff to be seized.

In March, 1898, S. E. Bloch & Bro. filed the present suit, which is a rule on the sheriff to show cause why the proceeds of the partition sale should not be paid to them, as holders of two of the mortgage notes and of the judgment in the suit of Citizens' National Bank v. Hartwig Moss. The rule is taken as an incidental proceeding in the partition suit of Adolph Meyer v. Hartwig Moss. One of the allegations of the petition is that Michael Marcus figured as mortgagee in the mortgage act merely as a matter of form, that he was not a regular creditor, and that he never was the true owner of two of the notes of the $25,000 mortgage, but in reality held these notes for Hartwig Moss. To substantiate this allegation, the plaintiffs annexed to their petition interrogatories on facts and articles propounded to Hartwig Moss.

To the rule Hartwig Moss makes answer that S. E. Bloch & Bro. are not the owners of the mortgage notes; that the notes were placed in their hands merely as a matter of favor and accommodation, to enable them to tide over the financial difficulties brought upon them by the failure of Charles Moss & Co., and were to be returned after the purpose of the loan had been fulfilled.

To the interrogatories he answers that the mortgage was executed for the use of Charles Moss & Co., and the notes were delivered to them, and that, so far as he knows, Michael Marcus is the bona fide owner of the two notes.

The sheriff answers that, acting under the judgment transferring the mortgages to the proceeds, wherein Michael Marcus was recognized as holder of two of the mortgage notes, he has paid to the latter the pro rata of said proceeds coming to him as holder of said notes, and that he holds the remainder of said proceeds subject to the order of the court.

Mrs. Gertrude Marcus, wife of Michael Marcus, who, as stated above, is a judgment creditor of Hartwig Moss & Co., and has caused the funds in the hands of the sheriff to be seized by a fi. fa., has intervened, alleging that the pledge of the notes took place after the failure of Hartwig Moss & Co., at a time when Hartwig Moss & Co. were notoriously insolvent, and to the prejudice of the other creditors of Hartwig Moss & Co., including herself, and praying that the pledge be annulled, and that she be decreed to be entitled to the funds by virtue of the privilege resulting from her seizure.

While S. E. Bloch & Bro. thus declare upon the three mortgage notes, one of which is now merged in judgment, they, in their testimony, explain that the real indebtedness of Hartwig Moss to them stands upon the three chirographic notes of Hartwig Moss & Co., mentioned above; that is to say, upon the three notes for $2,587.90, $2,614.95, $6,375, respectively, made by Hartwig Moss & Co. in favor of Charles Moss & Co., indorsed over by the latter to S. E. Bloch & Bro., and negotiated by these last, and subsequently taken up and paid by them as indorsers.

Hartwig Moss, in his testimony, denies that S. E. Bloch & Bro. are or ever were creditors of Hartwig Moss & Co. He says that the true history of this outstanding paper of Hartwig Moss & Co.'s is that for some time preceding the failure of Hartwig Moss & Co. the firms of S. E. Bloch & Bro. and Chas. Moss & Co. had been resorting to the practice of what is called "kiting paper," and that in doing this they made use of the firm of Hartwig Moss & Co. as an intermediary; that, for the benefit of S. E. Bloch & Bro., Hartwig Moss & Co. would make their note in favor of Chas. Moss & Co., to be indorsed over by the latter firm to S. E. Bloch & Bro., and, for the benefit of Chas. Moss & Co., Hartwig Moss & Co. would draw their drafts in favor of themselves on S. E. Bloch & Bro. to be accepted by the latter and turned over to Chas. Moss & Co.; that this paper was exclusively for the accommodation of Chas. Moss & Co. and S. E. Bloch & Bro., and in no wise for the benefit of Hartwig Moss & Co. He admits that, as a member of the firm of Chas. Moss & Co., he

is individually liable on the drafts mentioned above, but says that S. E. Bloch & Bro. are not suing him on these drafts, but on the notes; and he insists that the notes were made for the sole accommodation of S. E. Bloch & Bro., and that he is in no way, shape, or form liable on same.

Against the three chirographic notes and against the two mortgage notes not merged in judgment he pleads the prescription of five years.

By way of rejoinder, S. E. Bloch & Bro., plaintiffs in rule, plead against Hartwig Moss and against the intervener res judicata, and the prescription of one year applicable to the action in nullity of judgment, and also the prescription of one year applicable to the revocatory action.

Consolidated with this litigation is the suit of Citizens' National Bank v. Hartwig Moss, wherein S. E. Bloch & Bro. seek to revive the judgment rendered against Hartwig Moss on one of the mortgage notes. To this demand for revival Hartwig Moss makes the same defenses as to the rule.

The prescription of one year to the revocatory action of the intervener is well pleaded. "No contract made between the debtor and one of his creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor was insolvent to the knowledge of the creditor with whom he contracted and although the other creditors are injured thereby, if such contract was made more than one year before the bringing of the suit to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another." Article 1987, Civ. Code. This article has always been interpreted as written. See case of Morris v. Cain's Ex'rs, 39 La. Ann. 720, 1 South. 797, 2 South. 418, and cases there cited.

The intervener would avoid this prescription by invoking the maxims, "Contra non valentem agere non currit prescriptio," and "Quæ temporalia sunt ad agendum perpetua sunt ad excipiendum."

These principles apply neither to the law nor to the facts of the case. Not to the law, since we are not here concerned with an ordinary prescription, but with a condition attached by law to the grant of a right of action. The right to the revocatory action is not an ordinary right of the creditor; it is one statutorily granted, and thus granted subject to the condition that it shall be exercised within one year; and the creditor possesses and enjoys it as it is granted—that is, subject to this condition. That this term is not an ordinary prescription, and that the causes by which ordinary prescription is suspended—minority, for instance—do not affect it, has heretofore been expressly decided. Ashbey v. Ashbey, 41 La. Ann. 102, 5 South. 539. See, also, Cox v. Von Ahlefeldt, 105 La. 583, 30 South. 175.

We are aware that this court held differently in the case of Marshall v. Grand Gulf R. Co., 12 Rob. 198, where the maxim "Quæ temporalia," was considered to be applicable, but that decision must be deemed to have been impliedly overruled by the case of Ashbey v. Ashbey. Besides, that decision is one not to be followed for another reason. The practical operation of its doctrine would be to abrogate article 1987 of the Code, as a moment's examination will show. More than one year after the railroad company had transferred and duly delivered some property to one of its creditors, another creditor attached the property. The owner of the property intervened to claim his property, and was met by the revocatory action, and when he pleaded the prescription of one year the maxim quæ temporalia was quoted to him. If this were good law, any creditor in any case might nullify article 1987 by simply proceeding by attachment instead of by direct action; and, since time cuts no figure in the matter, he might thus invoke the maxim as well after 1,000 years of possession on the part of the transferee as after one day, if the principal obligation could be kept alive that long. The maxim quæ temporalia may be invoked only by the party in possession against the party out of possession. "Our modern authors are as one," says Marcadé, "in recognizing that it is applicable only to a defendant in possession, either of the thing sought to be taken away from him, or of the right sought to be restricted." Marcadé, Prescription, art. 2262, No. 1. The decision just reversed this order of things. It permitted the attaching creditor, who was out of possession, to invoke the maxim against the intervener, who was in possession.

For the same reason of no possession, the maxim is inapplicable to the facts of the instant case. S. E. Bloch & Bro. have been in possession of the property, namely, the mortgage notes, and the intervener and her debtor have been out of possession.

The maxim contra non valentem is inapplicable for the reason that the intervener could at any time have instituted the suit against S. E. Bloch & Bro.; the ultimate res, namely, the mortgaged property, being within the jurisdiction of the court. Neither then nor now could the action reach the notes in the hands of third persons, but it could then just as well as now reach them in the hands of S. E. Bloch & Bro. Pasley v. McConnell, 38 La. Ann. 475.

The prescription of one year applicable to the action in nullity of judgment pleaded by the plaintiffs does not fit the facts of the case. No attempt is being made to annul the judgment rendered in the case of Citizens' National Bank v. Hartwig Moss. It is conceded that that judgment was well rendered, but it is denied that S. E. Bloch & Bro. are owners or pledgees of it. The issue thus raised is one dehors the judgment.

This issue of whether plaintiffs are owners or pledgees of the judgment in question is one which the judgment cannot by any possibility be res judicata of since it is an issue which could not possibly have been raised in the suit. As holders in good faith before maturity, the Citizens' National Bank was entitled to judgment, regardless of the conditions under which the notes had been placed in the hands of S. E. Bloch & Bro. Any attempt on the part of Hartwig Moss, as defendant in the suit, to raise an issue in connection with these conditions, would have been merely futile. Furthermore, the object and purpose of putting the notes in the hands of S. E. Bloch & Bro. was that the latter might pledge them. As a defendant in that suit, then, Hartwig Moss could not possibly have denied the right of S. E. Bloch & Bro. to make the pledge to the plaintiff bank. That a judgment can be res judicata only of the issues which could have been raised in the suit in which it was rendered is a self-evident proposition.

When S. E. Bloch & Bro. paid their debt to the Citizens' National Bank, the note, now merged in the judgment, reverted to them.

They claim in this suit that by this transfer and retransfer they ceased to be the mere pledgees of the note or judgment, and became the absolute owners of it. This position is untenable. The transfer was a pledge, not a sale; and the retransfer was a redemption, not a purchase. The effect of the redemption was to do away with the pledge, and place matters just as if the pledge had never been made. And, besides, it is perfectly plain that a pledgee cannot change the nature of his title by transferring the collateral and reacquiring it. Daniels on Negotiable Instruments, §§ 176, 805, citing Sawyer v. Wiswell, 9 Allen, 42; Kost v. Bender, 25 Mich. 516; Todd v. Wick, 36 Ohio St. 387.

S. E. Bloch & Bro. invoke, also, an estoppel claimed to arise from the fact that Hartwig Moss was party to the suit brought by his wife against the clerk of court and the apparent holders of the mortgage notes to have the mortgage transferred to the proceeds. Say the plaintiffs, it is alleged in that suit that S. E. Bloch & Bro. and the Citizens' National Bank are the owners of the three mortgage notes. Hartwig Moss was a party plaintiff to the suit, and participated in that allegation. This estops him from now contesting the ownership of S. E. Bloch & Bro. and of the Citizens' National Bank. The answer to this contention is that the suit was that of Mrs. Moss, and not of Mr. Moss, and that Mrs. Moss had no interest in contesting the title to the notes, and was without quality to do so, and that, in order to have the proper parties before the court, she was forced by the very nature of her proceeding to cite the actual holders of the notes, regardless of whether these actual holders were or not the real holders. The further answer is that Mr. Moss could not, because of some private quarrel of his own with the actual holders of the notes, refuse to authorize his wife to bring the suit, thereby blocking her proceeding; nor could he inject into his wife's proceeding this private quarrel of his own with the actual holders of the notes. There is here no ground for estoppel.

On the question whether or not Hartwig Moss & Co. were indebted on the three chirographic notes mentioned above, to secure which the mortgage notes are claimed to have been pledged, and whether or not the mortgage notes were transferred to S. E.

Bloch & Bro. as collateral security for a debt, or merely as a loan, the evidence is conflicting. The preponderance, we think, is with the plaintiffs, both in number of witnesses and in corroborating circumstances. The three Blochs stand against the two Mosses—Hartwig and William. The searching criticism to which the testimony of the Blochs has been subjected on the part of Moss' able counsel falls short of revealing anything which the witnesses might not possibly have explained, if questioned directly thereto, whereas the testimony of defendant Hartwig Moss is in palpable contradiction with the letter transcribed above, wherein he promises to forward the mortgage notes "as collateral." This phrase has a well-known and unmistakable meaning, and is utterly inapt as descriptive of a mere accommodation lending.

This letter shows that there was a debt, since a collateral presupposes a debt. Besides, Hartwig Moss does not deny that there was a debt, but says that it stood on the drafts, and not on the notes. Now, since the notes and the drafts were for like amount, and both past due, we fail to see what motive S. E. Bloch & Bro. would have had in pitching their demand on the notes, instead of on the drafts, other than the desire to conform to the facts. Defendants' complaint would seem to reduce itself to a question, one might say, not so much of dollars and cents as of form.

The prescription of five years pleaded against the three chirographic notes and the two mortgage notes is good as to the latter—the time having elapsed, and no cause of suspension or interruption of prescription being suggested—and it is sustained. This, however, does not affect the result of the suit, since the judgment on the third mortgage note is more than sufficient to absorb the entire fund in dispute. The prescription is not good as to the three chirographic notes. As to these, the pledge of the mortgage notes operated as a constant interruption of the course of the prescription.

The point that, by pledging the notes to the Citizens' National Bank and others, S. E. Bloch & Bro. parted with the possession of them, and thereby put an end to the pledge, is not well made. The pledgees held under S. E. Bloch & Bro., and their possession was a continuation of that of S. E. Bloch & Bro., who could at any time resume actual possession by paying the debt as they eventually did do.

In the case of Peters v. Pacific Guano Co., 42 La. Ann. 690, 7 South. 790, the party agreed on by the parties to hold the pledged property made a subpledge; and the contention was urged, as here, that by the subpledge the pledgor had parted with the possession, and thereby put an end to the pledge. The court rejected the contention, treating as a plain proposition that the principal pledge was not destroyed by such subpledge. Indeed, subpledging is at common law, and was under the old Civil law, matter of right; and whether not so likewise under the Code Napoleon and under our Code, quære? See Denis on Pledge, No. ——.

By supplemental brief, filed since the above was written, counsel for defendant seek to distinguish the Guano Company Case on the ground that in it the subpledge was made by consent of the pledgor. We fail to find that fact stated in the decision. Nor is it likely that the court would have wasted its time in considering whether such transfer to a third person with the consent of the pledgor could operate a divestiture of the pledge. Consenting to the subpledge would be consenting that the subpledgee, during the continuation of the subpledge, should hold possession of the property pledged, "as a third person agreed on by the parties," and our Code expressly provides that the parties may agree upon a third person to hold possession of the pledge. Under our Code, then, there can be no such legal question as the one suggested, namely, whether the making of a subpledge with the consent of the pledgor has the effect, as between the pledgor and the pledgee, of divesting the possession of the pledgee. The syllabus of counsel's brief reproduced in the report of the case shows that it was conceded that a third person could be agreed on to hold possession of the property pledged.

But if it were granted that in that case there had been a consent of the pledgor, would the case be thereby distinguished from the present one? Did not the pledgor in the present case give such consent? Did he not put the mortgage notes in the hands of S. E.. Bloch & Bro. for the express purpose of their

being utilized by being pledged to third persons? Defendant himself says that that was his purpose in putting the notes in the hands of S. E. Bloch & Bro.

While possession is of the essence of pledge, it is so only in the interest of third persons who might be misled by the continued possession of the pledgor, and be induced to extend to him a credit to which he was not entitled. Were it not for this interest of third parties, possession would be no more essential in pledge than in any other contract. Apart from this interest of third parties, there can be nothing sacramental in the manner in which the creditor may choose to exercise his right of possession. So long as he retains control, and by the force of his contract keeps the debtor out of possession, that long a status is maintained such as amounts to a constant acknowledgment of the right of the creditor, and, as a consequence, operates a constant interruption of the course of prescription.

We do not review that part of the case relating to the payment by the sheriff to Michael Marcus, for the reason that the plaintiffs, by praying for an affirmance of the judgment, have ratified this payment, which stood approved as the result of the judgment appealed from.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, and that the appellants pay the costs of appeal.