[File No. 6198.]

WILLIAM MILLER, Respondent, v. C. C. TURNER et al., and
STATE OF NORTH DAKOTA Doing Business as the State
Bonding Fund, Appellant.

(253 N. W. 437.)

Opinion filed February 16, 1934.  Rehearing denied March 24, 1934.

*A. J. Gronna,* Attorney General and *Harold D. Shaft,* Assistant Attorney General, for appellant.

*Burdick, Burk & Burdick,* for respondent.

BURKE, J. Plaintiff brings this action against the defendant, C. C. Turner, as warden of the State Penitentiary and against the state bonding fund on two causes of action. There was a general demurrer to the complaint which was overruled and the state, on behalf of the state bonding fund, appealed and the only question involved is, is there a cause of action stated as against the state bonding fund?

It is the contention of the appellant that it appears upon the face of the complaint that the first cause of action accrued on the 8th day of June, 1930 and the second cause of action accrued on the 9th day of September, 1931; that notice of claim against the bonding fund was served October 1, 1932 by registered letter and more than sixty days after the discovery of the wrongful acts complained of.

The law establishing a state bonding fund was first enacted as chapter 62, Session Laws of 1915. There was no limitation of time for bringing an action against the bonding fund in the 1915 act, but section 15 provided: "Whenever a loss shall occur in any county, city, village, township or school district by the default of any officer of the same whose fidelity has been insured under the provisions of this Act, it shall be the duty of the County Auditor, City Auditor, Village, Township or School District Clerk or Treasurer in case the defaulting officer is the Auditor or Clerk, as the case may be, immediately to notify the Commissioner of Insurance. The Commissioner of Insurance shall thereupon notify the State Examiner; and it shall be the duty of the State Examiner when so notified to check the accounts of such defaulting official and file a report with the Commissioner of Insurance." This law was amended and re-enacted as chapter 158 of the Laws of 1919 which is entitled: "An Act to Amend and Re-enact Chapter 62, Laws of North Dakota for the Year 1915; to Create a State Bonding Fund; Providing for the Maintenance and Limiting the Expense Therefor; Prescribing the Duties of the Officers Connected Therewith; Providing for the Payment of Premiums and of Indemni-

ties; Providing for Presentation and Allowance of Claims and Fixing Limitations of Actions Thereon; and Providing for Adjustment of Premiums; Providing for Transfer of Funds and Records and Assuming Liabilities Under the Previous Act." This is a much broader title than the title to the first act and includes the provision: "Providing for Presentation and Allowance of Claims and Fixing Limitations of Actions Thereon." Sections 7 and 9 of the new act are apparently in response to such provision. Section 7 reads as follows: "Immediately upon, and in no event later than sixty days after, the discovery of any default or wrongful act on the part of any public employee for which the state bonding fund is or may become liable, the State Auditor, county auditor, city auditor, village, township or school district clerk or the treasurer in case such officer is the auditor or clerk, and any other officer having supervision of such public employee shall, and any person injured by such default or wrongful act may, file with the Commissioner a claim against the state bonding fund. Such claim shall contain an abstract of the facts upon which it is based, and shall be verified by the claimant or by some one in his or its behalf." Here is a direct provision that the officers shall immediately upon, and in no event later than sixty days after, the discovery of default file with the insurance commissioner a claim against the state bonding fund and any person injured by such default, or wrongful act, may file such claim. Section 9 provides that no action shall be maintained against the state bonding fund upon any claim whatever until the claim has been first presented and allowed and the allowance refused and no action shall be maintained against the state bonding fund upon any claim unless such action is brought within one year after the filing of the claim with the commissioner of insurance.

No action can be maintained against the state bonding fund unless the claim is filed within sixty days after the discovery of the default or wrongful act and the right to bring the action is limited to one year from the time of the filing of the claim. This latter provision is a special statute of limitation applying to the state bonding fund only.

It is the contention of respondent that the plaintiff is excused from filing the claim for the reason that under § 10,350, Compiled Laws,

1913, his civil rights were suspended while he was an inmate of the Penitentiary and that under § 5838, Compiled Laws 1913, he was deprived of the power to enter into a contract while his civil rights were suspended and, as alleged in his complaint, under the rules and regulations enforced by said C. C. Turner, as warden, plaintiff could not send communications to any person without first submitting the same to the said warden, or his deputy, for the purpose of censor; that any notice thus sent would immediately become known to the defendant, C. C. Turner, and would thus endanger the plaintiff's peace, personal safety and subject the plaintiff to further punishment.

Respondent further contends that the negligence of the defendant, C. C. Turner, was a continuing negligence, continuing all of the time and up to the time the plaintiff was released from the Penitentiary and that the claim was, in law, filed within the sixty day period. The allegations of the complaint, upon which plaintiff relies, are as follows: "That on or about the 8th day of June, 1930, and while plaintiff was so incarcerated in the said Penitentiary and employed for and under the management and control of the defendant, C. C. Turner, a boiler compound tank exploded and injured the right eye of the plaintiff; that the plaintiff immediately sought medical attention at said Penitentiary, where said services are furnished by the state and where said eye could have been properly dressed and cared for by the defendant, C. C. Turner; the defendant, C. C. Turner, negligently, carelessly, wantonly and in violation of his duties as such warden, refused to furnish any medical attention and refused to have the said plaintiff treated; that the said eye was never treated at any time while the plaintiff was so incarcerated and at all times the defendant negligently, carelessly, wantonly and in violation of his duties as such warden, refused to furnish such treatment, or allow the plaintiff to obtain the same." On the second cause of action, after alleging the injury, the plaintiff continues, "that upon receiving said injury, the plaintiff applied to the defendant, C. C. Turner, for medical aid and attention, but the defendant, C. C. Turner, negligently, carelessly, wantonly and in violation of his duties as such warden, refused to furnish said medical attention and the plaintiff was required to remain behind said screen and in said dungeon with said broken hand and foot without medical

care or attention and the plaintiff, never at any time while so incarcerated in said Penitentiary, received medical care or attention for the above described injury."

It is true that under § 10,350, Compiled Laws, 1913 the plaintiff was deprived of his civil rights while in prison. Section 10,351 relates to life imprisonment and § 10,352 reads "The provisions of the last two sections must not be construed to render the person therein mentioned incapable of making and acknowledging a sale or conveyance of property." While a convict cannot make contracts generally under this last section he can make such contracts as are necessary for the disposition of his property only. He has no authority to make any other kind of a contract and can maintain no action except those which concern his personal liberty and are based on natural rights as distinguished from legal rights. He may be sued and in such case he can defend. 13 C. J. 918, § 11; 21 R. C. L. 1180, § 18; Coffee v. Haynes, 124 Cal. 561, 57 P. 482, 71 Am. St. Rep. 99; Brown v. Mann, 68 Cal. 517, 9 P. 549; Re Nerac, 35 Cal. 392, 95 Am. Dec. 111; Cannon v. Windsor, 1 Houst. (Del.) 143; Wooldrige v. Lucas, 7 B. Mon. 49; Byers v. Sun Sav. Bank, 41 Okla. 728, 139 P. 948, 52 L.R.A.(N.S.) 320, Ann. Cas. 1916D, 222; Avery v. Everett, 110 N. Y. 317, 18 N. E. 148, 1 L.R.A. 264, 6 Am. St. Rep. 368; Troup v. Wood, 4 Johns. Ch. 248; Platner v. Sherwood, 6 Johns. Ch. 118; McLaughlin v. McLaughlin, 228 Mo. 635, 129 S. W. 21, 137 Am. St. Rep. 680; Kenyon v. Saunders, 18 R. I. 590, 30 Atl. 470, 26 L.R.A. 232. The plaintiff could not bring his action for damages while his civil rights were suspended and if the defendant, Turner, wilfully and wantonly, refused the plaintiff medical treatment, as alleged in the complaint, and which allegations, on demurrer, we must assume to be true, then and in such case it is more than probable that any claim prepared by the plaintiff against the state bonding fund necessarily submitted to the warden, under the prison rules, would not be filed with the insurance commissioner by the warden and assuming that the warden would not permit the filing of the same and that the failure to file the claim within the statutory period was not the fault of the plaintiff, the question now is, would the disability of the plaintiff, whose civil rights were suspended, excuse him from filing the claim within the statutory period and could he, after the removal of the disability, proceed by filing

his claim, within sixty days, after his release and bring his action within one year after the filing of his claim?

The bonding fund law has been before this court in several cases. The first, Madden v. Dunbar, 52 N. D. 65, 201 N. W. 988. In this case the court held that the filing of the claim against the bonding fund, within sixty days following the discovery of any default, or wrongful act, is a condition precedent to the bringing of an action against the bonding fund. That is, no action could be brought against the bonding fund unless the claim was filed not later than sixty days after the discovery of a default, or wrongful act, and it was further held that the facts showing the filing of a complaint 'as a condition precedent to the bringing of an action must be alleged in the complaint. After citing authorities supporting the rule " 'that so long as the language used is unambiguous, a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy, and it is the plain duty of the court to give it force and effect,' " 36 Cyc. 114, the court said "Applying the above rules of construction to this statute there does not appear to be any ambiguity whatever in the wording of the statute. The claim must be filed immediately upon or within sixty days after the discovery of any default or wrongful act upon the part of the public employee for which the state bonding fund shall or may become liable. · It does not say anything about any contingency that might prevent a claimant from bringing an action until a later day. The date from which the sixty days limitation runs is the date of the discovery of the default or wrongful act upon the part of the public employee. There is no question concerning the intention of the Legislature which enacted the statute. It is plain, clear and unambiguous." That decision was followed in Felch v. Olsness, 53 N. D. 18, 204 N. W. 848 and again in Burke County v. Enget, 54 N. D. 131, 209 N. W. 362.

A case very much in point is the case of Cushing v. Winterset, 144 Iowa, 260, 122 N. W. 915. In that case the Iowa court had under consideration an act limiting the time for bringing of actions for personal injuries from defective streets to three months, unless notice of the accident has been served on the municipality within sixty days after the accident. The court said "The statute of limitations relating to the injuries to the person, and requiring actions therefor to be brought

within two years, was in force when the acts of the 22d General Assembly was passed . . . and that provision is retained as paragraph 3, Code, § 3447. The act of the Twenty-Second General Assembly was not therefore as originally adopted a part of the statute of limitations, but was a specific provision with reference to actions brought against municipal corporations to recover for injuries to the person and its purpose was to give such corporation such notice of the claim as would enable it to investigate the circumstances of the injury while the facts are fresh and the witnesses are available. Giles v. Shenandoah, 111 Iowa, 83, 82 N. W. 466; Bliven v. Sioux City, 85 Iowa, 346, 52 N. W. 246. The fact of the service of the notice was a material allegation on the part of the plaintiff, if his action was not brought within three months. Pardey v. Mechanicsville, 101 Iowa, 266, 70 N. W. 189. If the proper notice had been served within the specified time, then the action was covered by the general statute of limitations as to actions for personal injuries, and might be brought within two years. Robinson v. Cedar Rapids, 100 Iowa, 662, 69 N. W. 1064. . . . We think it apparent, therefore, that the provision of Code, § 3447, requiring that an action against a municipal corporation for injury to the person on account of a defective street shall be brought within three months, unless the specified notice has been served, is in the nature of an exception to the general provision of the statute, . . . requiring actions for injuries to the person to be brought within two years. . . . And we, therefore, hold that section 3453 does not have the effect of extending in favor of minors the exceptional clause requiring such actions as this to be brought within three months where no notice has been served . . . we hold that the giving of the sixty days' notice is a condition precedent to the right to bring an action after the expiration of three months."

37 C. J. 985, § 370 states the rule as follows: "The saving of the operation of limitations by reason of disabilities depends upon the statute as it existed at the time the cause of action accrued; in the absence of such a saving clause, the statute runs against all persons, whether under disability or not; and when exceptions in favor of persons under disability are made they should be strictly construed and never extended beyond their plain import or to disabilities not enumerated in the saving clause." 17 R. C. L. 828, § 190 states the rule as

follows: "As a general rule the courts are without power to read into these statutes exceptions which have not been embodied therein, however reasonable they may seem. It is not for judicial tribunals to extend the law to all cases coming within the reason of it, so long as they are not within the letter. Considerations of apparent inconvenience or hardship will not be allowed to control. The enactment of the lawmaking power within its legitimate field must not be obstructed by the judicial administration." Particular statutes complete in themselves, or statutes governing particular remedies and rights fixing the time within which the remedy must be pursued or the right enforced, without exception, are not subject to general limitation acts and the exceptions of disabilities therein. Reid v. Hamilton, 92 Ky. 619, 18 S. W. 770; Meyer v. Moss, 110 La. 132, 34 So. 332; Ashley v. Ashley, 41 La. Ann. 102, 5 So. 539; Mull v. Walker, 100 N. C. 46, 6 S. E. 685; Headen v. Womack, 88 N. C. 468; Hunt v. Wall, 75 Pa. 413; Lewis v. Pawnee Bill's Wild West Co., 6 Penn. (Del.) 316, 66 Atl. 471, 16 Ann. Cas. 903. The last cited case was an action for personal injury. The defense was that it was not brought within the statutory period of one year after the injury, although it was conceded that the defendant had been out of the state of Delaware and there was a general statute providing that the statute of limitations did not run while the defendant was absent from the state. The court said: "The said Act of 1897 contains no saving clause whatever, and no reference to any saving clause in any other statute. It does not purport to be an amendment or supplement to said chapter 123 or to any other statute. Upon its face it has no relation to said chapter or to any other statute. It is a special statute limiting the bringing of actions for causes therein designated to one year after the cause of action accrued. We are asked, in construing said act, to read into it and make a part of it certain exceptions contained in another statute. The language of said act is plain and needs no construction to ascertain its meaning. . . . 'The rule is therefore well settled that unless there is an express provision in the statute in favor of persons under disability, it runs against them as against all others. As to all other exceptions to the general operations of the statute, the rule is the same. The courts cannot create exceptions in favor of any class of persons, or cases, or in favor of particular cases, when the statute itself makes none, and

no hardship which might result from an adherence to this rule can justify a court in departing from it and reading into the statute some qualifications which the legislature did not provide.' " In this case the cases on the subject are collected and cited in the opinion and in the voluminous note following. See also Mack v. Mendels, 249 N. Y. 356, 164 N. E. 248, 61 A.L.R. 386; Kenyon v. United Electric R. Co. 51 R. I. 90, 151 Atl. 5.

The statute we are considering is a complete act in itself. It does not make any exceptions; it is clear and unambiguous and it applies to those under disability as well as to those who are not. This leaves the one contention of the plaintiff, that the negligence of the defendant, Turner, was a continuing negligence; that the plaintiff was entitled to medical treatment during the whole period of his incarceration and that since the negligence continued up until the time he was released and the claim was filed within sixty days from his release that he was entitled to file his claim.

In support of this position the plaintiff relies upon the case of Bush v. Cress, 178 Minn. 482, 227 N. W. 432, an action for malpractice against a physician wherein it was held that the action was brought within the statutory period for the reason that the last treatment of the doctor was within that period. To the same effect is Schmitt v. Esser, 178 Minn. 82, 226 N. W. 196; Sly v. Van Lengen, 120 Misc. 420, 198 N. Y. S. 608; Gillette v. Tucker, 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639; Perkins v. Trueblood, 180 Cal. 437, 181 P. 642.

There might be merit in plaintiff's contention if these authorities were urged to support the liability of the defendant Turner; but they are urged, not against Turner, but against the state bonding fund, which is entirely innocent of any wrong doing. As stated in the Iowa case, the filing of the claim is for the benefit of the bonding fund, to give the officers in charge of such fund an opportunity to make inquiry while the facts are fresh and witnesses can be procured, and the continued wrong doing of the warden cannot be urged as against the bonding fund or against those in charge of it. There are good reasons for excepting persons while under disabilities from the operation of this act but the exceptions can only be made by the legislature. The

legislature has made none and hence the law applies to everyone without exception.

The order overruling the demurrer to the cause of action against the bonding fund is reversed.

BURR, Ch. J., and NUESSLE, and CHRISTIANSON, JJ., concur.

MOELLRING, J., did not participate.