1996 SD 93

**Norman STUMES, Plaintiff and Appellant,**

v.

**Jeff BLOOMBERG, Secretary of South Dakota Department of Corrections; Vernon L. Larson, South Dakota State Auditor; Tom Geraets, Commissioner of South Dakota Bureau of Administration; Carole Hillard, Lt. Governor of South Dakota; and Harvey Krautschun, Speaker of the South Dakota House of Representatives, Defendants and Appellees.**

No. 19426.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1996.

Decided July 24, 1996.

Norman Stumes, Sioux Falls, pro se.

Mark W. Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for defendants and appellees.

AMUNDSON, Justice.

[¶ 1] Norman Stumes (Stumes) appeals the dismissal of his action against certain elected and appointed officials who played a part in either the enactment of, or in the implementation of, Chapter 140 of the 1995 South Dakota Session Laws (State). We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] House Bill 1359 was passed by both houses on the last day of the Seventieth Session of the South Dakota Legislature. Governor Janklow signed the bill into law on March 30, 1995. *See* 1995 S.D. Sess. L. ch. 140. This bill was a special appropriations bill that appropriated money to the Department of Corrections for the construction, repair, maintenance, and upgrading of existing and new correctional facilities.

[¶ 3] Stumes has been incarcerated at the South Dakota State Penitentiary in Sioux Falls, South Dakota, since 1974. *See State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976). He is serving a life sentence for first-degree manslaughter. Stumes attempted to file his complaint in Hughes County Circuit Court on July 25, 1995. However, Stumes did not perfect service until September 19, 1995. On October 17, 1995, the notice and admission of the summons and complaint were filed in circuit court. The pro se complaint requested the circuit court declare the special appropriations bill unconstitutional and prohibit the various officials from expending funds authorized under the bill. The complaint asserted that, since the bill was passed after midnight, in effect the bill was passed on the forty-first day of session. Article III, § 6, of the South Dakota Constitution states "[a] regular session of the Legislature shall be held in each odd-numbered year and shall not exceed forty legislative days...." Therefore, Stumes claims that House Bill 1359 is unconstitutional. The State filed a motion for dismissal of the complaint based on Stumes' alleged lack of standing and failure to state a claim upon which relief could

be granted. Stumes filed a motion for judgment by default asserting the State failed to timely file its responsive pleading to Stumes' complaint.

[¶ 4] The circuit court considered both motions and issued a memorandum decision and order on November 30, 1995. In the memorandum decision and order, the circuit court dismissed Stumes' complaint with prejudice, stating that Stumes did not have standing. The circuit court did not address Stumes' default motion. Stumes appeals, raising the following issues:

    I.    Whether a prisoner is a taxpayer with proper standing to bring suit to challenge the constitutionality of a special appropriations bill?

    II.    Whether the circuit court correctly determined the date which service was effected applicable to Stumes' motion for default judgment?

### ANALYSIS

**[¶ 5] I. Whether a prisoner is a taxpayer with proper standing to bring suit to challenge the constitutionality of a special appropriations bill?**

[¶ 6] The action commenced by Stumes was dismissed via a motion made by State pursuant to SDCL 15–6–12(b)(2) and (5). A motion to dismiss under SDCL 15–6–12(b) tests the legal sufficiency of the pleading, not the facts which support it. *Estate of Billings v. Deadwood Congregation*, 506 N.W.2d 138, 140 (1993) (citing *Hunt v. Hunt*, 309 N.W.2d 818, 820 (S.D.1981)). For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader. *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 226 (S.D.1988); *Janklow v. Viking Press*, 378 N.W.2d 875, 877 (S.D.1985). "Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?" *Billings*, 506 N.W.2d at 140 (citing *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 764 (S.D.1989)).

[¶ 7] Generally, standing is determined by using the "real party in interest" test. *Wang v. Wang*, 393 N.W.2d 771, 775 (S.D.1986) (*Wang I*); SDCL 15–6–17(a). Under SDCL 15–6–17(a) "every action shall be prosecuted in the name of the real party in interest." This test is met if the claimant can prove " 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the Defendant.' " *Parsons v. South Dakota Lottery Comm'n*, 504 N.W.2d 593, 595 (S.D.1993) (quoting *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66, 76 (1979)); *see also Agar School Dist. No. 58–1 v. McGee*, 527 N.W.2d 282, 284 (S.D. 1995). Stumes did not present the issue of whether he is a real party in interest on appeal, therefore it is waived. *See Hautala v. Hautala*, 417 N.W.2d 879, 881 n.2 (S.D. 1988).

[¶ 8] As with any rule, there is an exception. Since 1896, we have stated that "taxpayers" and "electors" have standing without demonstrating a special interest in the action. *State ex rel. Adkins v. Lien*, 9 S.D. 297, 299, 68 N.W. 748, 749 (1896). This exception has never been codified, therefore it is a judicial recognition of an exception to the "real party in interest" test. If the taxpayer or elector seeks to protect a public right, no special injury or special interest need be established. *McGee*, 527 N.W.2d at 284; *Kanaly v. State by and through Janklow*, 368 N.W.2d 819, 827 (S.D.1985); *Lien*, 9 S.D. at 299, 68 N.W. at 749. This court has recognized a "public right" where a plaintiff seeks relief from a public official who is compelled by South Dakota law (public duty) or where a plaintiff seeks to protect public funds. *See Kanaly*, 368 N.W.2d at 827 (public funds—changing state university to minimum security prison); *Danforth v. City of Yankton*, 71 S.D. 406, 413, 25 N.W.2d 50, 54 (1946) (public duty—construction of toll bridge). "The constitutionality of legislation affecting the use of public funds is a matter of public right." *State ex rel. Parker v. Youngquist*, 69 S.D. 423, 426, 11 N.W.2d 84, 85 (1943). Since House Bill 1359 involves public funds, a matter of public right, we only need to determine whether Stumes is a taxpayer.

■ [¶ 9] The circuit court determined that Stumes, as an inmate, was not a taxpayer. Stumes was unemployed during these proceedings, had no assets, and carried a negative balance in his prison spending account. However, inmates are charged a six percent sales tax (four percent is state sales tax) on items purchased from the inmate commissary system. In addition, inmates are required to pay the applicable state and local sales taxes when making purchases from local businesses. Whether or not these elements give inmates status as taxpayers is a question of first impression for this court.

[¶ 10] The circuit court stated that, since Stumes did not own any real or personal property of value, had no bank accounts and carries a negative balance in his prison account, he was not a taxpayer. The circuit court went on to reason that all taxation in South Dakota is "based on the ownership or acquisition of assets, engaging in business enterprises or the voluntary utilization of public services. Since [Stumes] does not participate in any of these activities he does not fit the definition of 'taxpayer.'" Some states restrict the definition of taxpayer to a person owning property in the state subject to taxation and on which the person regularly pays taxes. See Morgan v. Board of Supervisors, 67 Ariz. 133, 192 P.2d 236, 240 (1948); Womack v. Varnado, 204 La. 1019, 16 So.2d 825, 827–28 (1943), cert. denied, 322 U.S. 717, 64 S.Ct. 1287, 88 L.Ed. 1558 (June 12, 1944); State ex rel. Sutton v. Fasse, 71 S.W. 745, 746 (Mo.App.1903). Others define a taxpayer as one who pays a tax or who is chargeable with a tax. See Koons v. Board of Commissioners of Atlantic City, 134 N.J.L. 329, 47 A.2d 589, 594 (1946). In fact, the general definition of "taxpayer" found in Webster's New Collegiate Dictionary, p. 1195 (1974) is "one that pays or is liable for a tax[.]" Since Stumes does not own any real property, he is not subject to the state property tax. Stumes argues that SDCL 10–45–2 (sales tax) grants him taxpayer standing. SDCL 10–45–2 states:

There is hereby imposed **a tax upon the privilege of engaging in business as a retailer,** a tax of four percent upon the gross receipts of all sales of tangible personal property consisting of goods, wares, or merchandise.... (Emphasis added.)

Through SDCL 10–45–22, the business may pass this tax on to the consumer:

Retailers **may** add the tax imposed by this chapter to the price of their product or service as provided by law. If no provision is made, the average equivalent of the tax may be added. Any person or retailer subject to taxation under this chapter **may** add the tax under this chapter, or the average equivalent thereof, to his price or charge. (Emphasis added.)

Stumes asserts that since this tax is passed on to the consumer, i.e., him, that he is in fact a taxpayer. This court has not addressed this issue, however, other courts have. In Sims v. Firestone Tire & Rubber Co., 397 Mich. 469, 245 N.W.2d 13, 15 (1976), the Supreme Court of Michigan held that even though the retailer could pass the tax on to the consumer, the "statutory language impose[s] the direct legal incidence of the [sales] tax upon the retailer for the 'privilege' of engaging in retail business. For the purposes of the act the retailer, not the consumer, is the taxpayer." The Michigan statutory tax scheme is identical to SDCL 10–45–2 and –22. See M.S.A. §§ 7.521 and 7.522.

[¶ 11] In Dow Jones & Company v. United States, 130 Ct.Cl. 696, 128 F.Supp. 748, 749 (1955), the United States Court of Claims held that, although excise taxes paid by the manufacturer on the sale of machines were passed on to the buyer, the buyer was not the taxpayer and could not maintain an action against the United States to recover such taxes. The United States District Court of Wisconsin followed this decision in Lac Courte Oreilles Chippewa Indians v. United States Internal Revenue Service, 658 F.Supp. 1434, 1438 (W.D.Wis.1987), aff'd 845 F.2d 139 (7th Cir.1988). See also Ace-Chicago Great Dane Corp. v. United States, 726 F.2d 321 (7th Cir.1984); Martin's Auto Trimming, Inc. v. Riddell, 283 F.2d 503, 505–06 (9th Cir.1960). Under the South Dakota statutory scheme, the mere payment of a sales tax by a consumer does not fit within the definition of a taxpayer.

[¶ 12] We judicially created the taxpayer standing exception and to this day it has not been codified. Since this was a judicially created exception, it is within the power of this court to limit its meaning. "[L]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen." *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459, 469 (1989). Furthermore, SDCL 23A–27–35 provides:

> A sentence of imprisonment in the state penitentiary for any term suspends the right of the person so sentenced to vote, to hold public office, to become a candidate for public office and to serve on a jury, and forfeits all public offices and all private trusts, authority or power during the term of such imprisonment.

Also, SDCL 22–14–15 prohibits a felon convicted of a violent crime from possessing a firearm.

[¶ 13] Stumes, by his conviction and incarceration, has foregone his constitutional right as a taxpayer when the door closed at the penitentiary. We acknowledge that by becoming a prisoner Stumes has not left all of his constitutional rights at the sliding metal door. *See Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64, 75 (1987). Recently the United States Supreme Court handed down *Lewis v. Casey*, —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Casey and others were inmates at various prisons operated by the state of Arizona. Casey claimed that they were not furnished with adequate legal research facilities and thereby were being deprived of their right of access to the courts, in violation of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The United States Supreme Court held:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves

into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, —— U.S. at ——, 116 S.Ct. at 2182, 135 L.Ed.2d at 620. Under our judicial exceptions power, we have the power to giveth and taketh; we do not believe that incarcerated individuals should be "litigating engines" in the taxpayer standing arena. The trial court did not err in holding that this engineer did not have standing to file this action.

[¶ 14] Since we do not extend taxpayer standing to Stumes, there is no need to reach the other issues.

[¶ 15] Affirmed.

[¶ 16] MILLER, C.J., KONENKAMP and GILBERTSON, JJ., concur.

[¶ 17] SABERS, Justice, concurs specially.

SABERS, Justice, concurring specially.

[¶ 18] I concur specially.

[¶ 19] As stated in the majority opinion, Stumes is a convicted felon and incarcerated in the South Dakota State Penitentiary. While imprisoned in the State Penitentiary, Stumes' right to vote is automatically suspended. SDCL 23A–27–35.[1] Since Stumes has no right to vote for legislators while imprisoned, he clearly has no right to challenge *their* legislative actions that do not affect him directly.

---

1. SDCL 23A–27–35 provides:
    A sentence of imprisonment in the state penitentiary for any term suspends the right of the person so sentenced to vote, to hold public office, to become a candidate for public office and to serve on a jury, and forfeits all public offices and all private trusts, authority or power during the term of such imprisonment. Any person who is serving a term in any penitentiary shall be a competent witness in any action now pending or hereafter commenced in the courts of this state, and his deposition may be taken in the same manner prescribed by statute or rule relating to taking of depositions. After a suspension of sentence pursuant to § 23A–27–18, upon the termination of the time of the original sentence or the time extended by order of the court, a defendant's rights withheld by this section are restored.

[¶ 20] Although a taxpayer or elector who seeks to protect a public right may do so without showing a special "injury" or "interest," it would be illogical and inconsistent to permit someone who has no right to vote for legislators to challenge a general legislative act. SDCL 23A–27–35. Therefore, Stumes has no standing to challenge a general legislative act and his action should be dismissed.[2]

2. As indicated in the majority opinion, this decision does not prevent an imprisoned felon from bringing a lawsuit to enforce his legal rights concerning his case or living conditions. The United States Supreme Court has guaranteed "meaningful" access to the courts, *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72, 79 (1977), and placed the burden upon the states to provide the tools for that access. *Id.* at 824, 97 S.Ct. at 1496, 52 L.Ed.2d at 80–81. However, as noted by the majority, the tools are guaranteed "in order to attack ['inmates'] sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606, 620 (1996).

A prisoner "can maintain no actions except those which concern his personal liberty and are based on natural rights as distinguished from legal rights. He may be sued, and in such case he can defend." *Miller v. Turner*, 64 N.D. 463, 253 N.W. 437, 439 (1934). Other courts have held prisoners have the right to be heard in civil cases, but do not have the right to personally appear. *See Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D.1995); *Rogers v. Youngblood*, 226 Ind. 165, 78 N.E.2d 663, 665 (1948).

These cases are based on the common-law concept of "civil death," which "substantially deprived one of his legal capacities and extinguished at least partially his civil rights.... The disability to appear as a plaintiff was said to be attributable to the forfeiture of the felon's estate, which resulted in the lack of remedial interest in the cause of action." Richard P. Taylor, Annotation, *Right in the Absence of Express Statutory Authorization, of One Convicted of Crime and Imprisoned or Paroled, to Prosecute Civil Action*, 74 ALR3d 680, 685 (1976).

There is contrary authority from courts which hold that unless a civil right is specifically taken away by statute, the prisoner retains that right. *See Bosteder v. Duling*, 115 Neb. 557, 213 N.W. 809, 812 (1927) ("Civil death, as known to the common law, is without place in our jurisprudence.") (holding that the rights to vote, to be a juror and to hold public office were specifically taken away by statute but other rights were not specifically taken away); *Chesapeake Util. Corp. v. Hopkins*, 340 A.2d 154, 155 (Del.1975) ("Statutes suspending the civil rights of imprisoned felons are penal and may not be extended by implication."). However, the position expressed herein is not an extension by implication of SDCL 23A–27–35, *supra* note 1, but inherent in the legislation itself.