ERNIE CHAMBERS, APPELLANT, V. SCOTT LAUTENBAUGH, DOUGLAS COUNTY ELECTION COMMISSIONER, APPELLEE.
644 N.W.2d 540

Filed May 24, 2002. No. S-01-110.

Robert V. Broom and Vard R. Johnson, of Broom, Johnson & Clarkson, for appellant.

Thomas G. Incontro, of Raynor, Rensch & Pfeiffer, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

In August 2000, Ernie Chambers brought suit against Scott Lautenbaugh, Douglas County election commissioner, seeking declaratory judgment and injunctive relief relating to Lautenbaugh's act of redrawing the Omaha City Council district boundaries in August 2000 based on 1990 federal decennial census data. Lautenbaugh demurred, and on January 17, 2001, the Douglas County District Court sustained Lautenbaugh's demurrer. The court dismissed Chambers' petition with prejudice, finding that it could not be amended to allege sufficient facts to state a cause of action. Chambers appealed.

## FACTUAL BACKGROUND

In his operative petition, Chambers alleged that on August 30, 2000, despite Chambers' demands that Lautenbaugh cease and desist from his announced plans to redraw the boundaries, Lautenbaugh proceeded to draw "new boundaries for the election of members of the City Council at the primary election to be held April 3, 2001 and the general election to be held May 15, 2001." Chambers further alleged that Lautenbaugh drew the new boundaries for the stated purpose of "maintain[ing] substantial equality of population among the districts." The petition asserted that Lautenbaugh exceeded his authority by drawing the new district boundaries based on 1990 federal decennial census data, rather than waiting to use the data from the 2000 federal decennial census.

Chambers also alleged in his petition that "[t]he Election Commissioner has no authority to draw district boundaries for the Omaha City Council for the purpose of maintaining substantial population equality among the districts except as set forth" in Neb. Const. art. III, § 5, and Neb. Rev. Stat. §§ 14-201.03 (Reissue 1997) and 32-553 (Reissue 1998). The petition contended that Neb. Const. art. III, § 5, requires the Legislature to

redistrict the state into legislative districts after each federal decennial census. According to the petition, the election commissioner, pursuant to § 32-553, must, if necessary to maintain substantial equality of population within the districts, redraw the boundaries within 6 months after passage and approval of the Legislature's bill which redistricts the state on the basis of the most recent federal decennial census.

Chambers' petition asked the district court to declare that Lautenbaugh's redrawing of the Omaha City Council district boundaries in August 2000 was unlawful, since it was done before the data from the 2000 federal decennial census was available and before the Legislature had passed legislation redistricting the state in 2001. The petition also asked the district court to declare unlawful any implementation of the new district boundaries and the consequent expenditures of employee time and public tax money. Finally, the petition requested that the court declare unlawful any Omaha City Council elections held under the new city council district boundaries.

On December 15, 2000, Lautenbaugh filed a demurrer alleging that (1) the district court had no jurisdiction over the subject matter of the action, (2) the district court had no jurisdiction over Lautenbaugh, (3) Chambers had no legal capacity to sue, (4) there was a defect of parties, and (5) the petition did not state facts sufficient to constitute a cause of action.

The district court held a hearing on the demurrer on January 8, 2001. On January 17, the court entered its order overruling allegations one through four of Lautenbaugh's demurrer, but sustaining allegation five on the basis that Chambers' petition failed to state a cause of action. In its order, the district court analyzed the arguments presented by Chambers and Lautenbaugh:

> [Chambers] alleges that the second portion of Section 32-553 of the Nebraska Revised Statutes not only requires redistricting if necessary but also limits redistricting to the six month period of time referred to therein. [Lautenbaugh] argues that Section 14-201.03 requires the election commissioner to redraw the boundaries of Omaha's city council districts whenever they are no longer substantially equal in population and, therefore, that the election commissioner has a statutory duty and obligation to redraw the boundaries

of the districts when their population is no longer substantially equal. The commissioner further argues that the basis to use to determine a redrawing of the districts was the most recent decennial census which in this case is the census taken in 1990.

The initial question is the meaning of the language in Neb. Rev. Stat. 14-201.03 which requires the commissioner to redraw the boundaries when the districts are no longer substantially equal in population **pursuant to Section 32-553** (emphasis added). Does the redrawing of the districts pursuant to Section 32-553 simply mean that the redistricting is to be determined by the most recent federal decennial census or does it mean that the redistricting is to be determined by the most recent federal decennial census but only within six months after the passage and approval of the legislative bill providing for reestablishing the states [sic] legislative districts?

If the Court follows the logic and argument of [Chambers] then redistricting is to occur once every ten years, if necessary. If the Court follows the logic and argument of [Lautenbaugh] the redistricting is to occur whenever the districts are substantially unequal in population as determined by the most recent decennial census.

(Emphasis in original.)

The district court found it significant that the Legislature "in drafting Section 14-201.03 and Section 32-553 did not use limiting or restrictive terms such as 'only' when mandating the redrawing of districts by the election commissioner when they became substantially unequal in population." The district court stated:

Since there is no language limiting the redrawing of districts by the election commissioner the Court further finds that the election commissioner can redraw, if necessary, districts more than the one time required in the year that the census figures are submitted to the State by the United States Department of Commerce.

On this basis, the district court found that Lautenbaugh's actions as election commissioner were lawful and that Chambers' petition could not be amended to state a cause of action against Lautenbaugh. The court sustained Lautenbaugh's

demurrer and dismissed Chambers' petition with prejudice. Chambers appealed.

## ASSIGNMENTS OF ERROR

Chambers assigns, rephrased, that the district court erred in (1) determining that his petition did not state facts sufficient to constitute a cause of action and (2) determining that Lautenbaugh, as Douglas County election commissioner, had the authority to redraw the Omaha City Council district boundaries before the data from the 2000 federal decennial census was available.

## STANDARD OF REVIEW

■ In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001).

■ In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *Id.* Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Id.*

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Premium Farms v. County of Holt,* ante p. 415, 640 N.W.2d 633 (2002).

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Wilcox v. City of McCook*, 262 Neb. 696, 634 N.W.2d 486 (2001). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999).

## ANALYSIS

### MOOTNESS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Tri-Par Investments v. Sousa, ante* p. 209, 640 N.W.2d 371 (2002). While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Wilcox, supra.*

Lautenbaugh argues that Chambers' case is moot due to several events which have occurred since the district court sustained Lautenbaugh's demurrer in January 2001. On April 3, 2001, Omaha City Council primary elections were held pursuant to the new district boundaries Lautenbaugh drew in August 2000. On May 15, the general election for the Omaha City Council was held utilizing the same boundaries. On May 16, an amendment to § 14-201.03 became operative, which, inter alia, removed the election commissioner's authority to redraw city council district boundaries and placed the responsibility with the Omaha City Council. See 2001 Neb. Laws, L.B. 71. In November 2001, the Omaha City Council passed, and Omaha Mayor Mike Fahey approved, city ordinance No. 35781, redrawing the Omaha City Council district boundaries based on data from the 2000 federal decennial census. Lautenbaugh claims that "because of LB 71, the completion of the elections at issue, the second redrawing of the Omaha City Council Districts and the passage of time, [Chambers'] appeal is now inconsequential, unsubstantial and moot."

" 'A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.' " *Wilcox,* 262 Neb. at 699, 634 N.W.2d at 489 (quoting *Hron v. Donlan,* 259 Neb. 259, 609 N.W.2d 379 (2000)). A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Greater Omaha Realty Co. v. City of Omaha,* 258 Neb. 714, 605 N.W.2d 472 (2000).

Assuming without deciding that all issues raised in Chambers' petition are moot, we determine that these issues

qualify for review under the public interest exception to the mootness doctrine. See *Wilcox, supra.* This court may choose to review an otherwise moot case under the public interest exception if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. *Id.* This exception requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Id.*

Chambers' petition raises the public issue of how often city council district boundaries may be redrawn pursuant to § 32-553. This issue, if adjudicated, would provide future guidance for public officials, including members of the Omaha City Council who, as a result of the amendment to § 14-201.03, are now responsible for redrawing city council district boundaries. Furthermore, the similar question of whether § 32-553 limits the Omaha City Council or other appropriate legal entities to redrawing district boundaries only once every 10 years will likely arise prior to the federal decennial census in 2010. For these reasons, we determine the public interest exception to the mootness doctrine applies to this case. However, before we may consider the issues Chambers raises on appeal, we must address another jurisdictional defect asserted by Lautenbaugh.

### STANDING

Lautenbaugh challenges Chambers' standing to bring this declaratory judgment action. Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Ritchhart v. Daub,* 256 Neb. 801, 594 N.W.2d 288 (1999). As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *State ex rel. Steinke v. Lautenbaugh, ante* p. 652, 642 N.W.2d 132 (2002). In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.* With regard to declaratory actions against public officials, we have specifically stated:

" '[A] person seeking to restrain the act of a public board or officer must show special injury peculiar to himself or herself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation.' "

*Id.* at 657-58, 642 N.W.2d at 138. Accord, *Hagan v. Upper Republican NRD*, 261 Neb. 312, 622 N.W.2d 627 (2001); *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000); *Ritchhart, supra.*

It is unnecessary for us to determine whether Chambers' petition shows "special injury" because the petition clearly alleges "an illegal expenditure of public funds." See *State ex rel. Steinke, supra.* A resident taxpayer, without showing any interest or injury peculiar to itself, may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. *Fitzke v. City of Hastings*, 255 Neb. 46, 582 N.W.2d 301 (1998). In paragraph 2 of his petition, Chambers states that he is a resident of the city of Omaha. In paragraph 10, Chambers alleges, "Employees in the office of the Douglas County Election Commissioner have spent and will spend in the future public time and money to implement the new district boundary lines, when such new boundary lines are not authorized by law." Finally, in his prayer for relief, Chambers asks the district court to "declar[e] that the commitment of employee time and the expenditure of tax monies for such purposes is unlawful and not authorized by law . . . ."

However, a mere allegation of illegal expenditures by public officials is not sufficient in itself to confer standing on a resident taxpayer. To assert standing, a resident taxpayer must also allege that a demand was made upon the municipal or public corporation and that the demand was refused, or facts which show that such a demand would be useless. See *Fitzke, supra.* " ' "Ordinarily a demand upon the responsible officers of the governmental subdivision or municipal corporation that they take action is necessary and a condition precedent to the right of a taxpayer to maintain an action for the recovery of funds on behalf of the governmental entity." ' " *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 899-900, 327 N.W.2d 595, 602 (1982). In paragraph 12 of his petition, Chambers asserts that he

has "on his own behalf" and "by and through legal counsel, made demand upon [Lautenbaugh] that [Lautenbaugh] cease and desist from his announced plans to redraw the boundaries of the city council districts in the year 2000." Chambers goes on to state, "Notwithstanding such demands, [Lautenbaugh] has drawn new district boundary lines for the seven City Council districts using 1990 census data." Thus, Chambers has alleged that a demand was made to Lautenbaugh and that such demand was refused.

We determine that Chambers has satisfied the conditions necessary to assert standing as a resident taxpayer in this action, and thus this court has jurisdiction to consider Chambers' assignments of error.

### STATUTORY INTERPRETATION

Having determined that Chambers has standing on the basis of his status as a resident taxpayer, we now examine whether the district court erred in sustaining Lautenbaugh's demurrer on the basis that Chambers' petition did not state facts sufficient to constitute a cause of action. In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Northwall v. State, ante* p. 1, 637 N.W.2d 890 (2002).

We begin with Chambers' request that the district court declare unlawful any implementation of the new district boundaries and the consequent expenditure of employee time and public tax money. In order to address this issue, we must first determine whether Lautenbaugh had the authority to redraw the district boundaries in August 2000.

Chambers asserts that § 32-553 permits the election commissioner to redraw district boundaries only once every 10 years. Section 32-553 states in part:

> (1) When any political subdivision except a public power district nominates or elects members of the governing board by districts, such districts shall be substantially equal in population as determined by the most recent federal decennial census. Any such political subdivision

which has districts in place on the date the census figures used in drawing district boundaries for the Legislature are required to be submitted to the state by the United States Department of Commerce, Bureau of the Census, shall, if necessary to maintain substantial population equality as required by this subsection, have new district boundaries drawn within six months after the passage and approval of the legislative bill providing for reestablishing legislative districts. Any such political subdivision in existence on the date the census figures used in drawing district boundaries for the Legislature are required to be submitted to the state by the United States Department of Commerce, Bureau of the Census, and which has not established any district boundaries shall establish district boundaries pursuant to this section within six months after such date. If the deadline for drawing or redrawing district boundary lines imposed by this section is not met, the procedures set forth in section 32-555 shall be followed.

We recognize that § 32-553 was amended during the pendency of this appeal by L.B. 71; however, the amendment does not change or affect the above-quoted language from § 32-553.

Chambers alleges that "[a]s a matter of law the Election Commissioner is without authority to redraw Omaha's City Council Districts 'to maintain substantial population equality' until a federal decennial census is effected and the Legislature has redistricted itself pursuant to the census figures." Brief for appellant at 10. Chambers further argues that the election commissioner "has been granted no power to periodically, on his own initiative, in less than the ten year framework, redraw the boundaries whether they may no longer be substantially equal in population or not." Brief for appellant at 7. Finally, Chambers contends that "[t]o use 1990 census data to justify redrawing in 2000 for a 2001 election is arbitrary. To claim in the 2000 redrawing that the districts now maintain substantial equality when the data is 10 years old is equally arbitrary." Brief for appellant at 11.

Chambers' allegations raise an issue of statutory interpretation. Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an

independent, correct conclusion irrespective of the determination made by the court below. *Premium Farms v. County of Holt, ante* p. 415, 640 N.W.2d 633 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.*

 Section 32-553 requires the appropriate legal entity to draw districts which are "substantially equal in population as determined by the most recent federal decennial census." The only reference in § 32-553 to a specific time period for redrawing districts appears in the requirement that the appropriate entity must, if necessary to maintain substantial equality of population within the districts, redraw the districts within 6 months after passage and approval of the Legislature's bill which redistricts the state on the basis of the most recent federal decennial census. This decennial redistricting is mandatory if necessary to maintain substantial equality of population within the districts. However, there is no language in § 32-553 which prohibits the appropriate legal entity from redrawing district boundaries at other times to maintain substantial equality. We thus determine that § 32-553 does not limit redrawing of district boundaries to only once every 10 years.

In his petition, Chambers alleges that Lautenbaugh's stated purpose for redrawing the city council district boundaries was "to maintain substantial equality of population among the districts" and that Lautenbaugh "drew such new districts by using the 1990 decennial census data." "Accept[ing] as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom," we determine that Lautenbaugh's actions in redrawing the district boundaries complied with § 32-553. See *Northwall v. State, ante* p. 1, 5, 637 N.W.2d 890, 894 (2002). Therefore, Chambers' petition fails to state a cause of action in that the petition alleges actions by Lautenbaugh that we have determined were lawful. In addition, we conclude that Chambers' remaining allegations likewise do not state a cause of action against Lautenbaugh because they, too, are based solely on Lautenbaugh's authority to draw the district boundaries.

■ Since Chambers' petition fails to state a cause of action against Lautenbaugh, the district court did not err in sustaining Lautenbaugh's demurrer. The district court also did not err in dismissing Chambers' petition with prejudice since there is no reasonable possibility that an amendment could state a cause of action against Lautenbaugh under the facts alleged in the petition. If, upon the sustainment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. *Northwall, supra.*

## CONCLUSION

For the foregoing reasons, we conclude the district court did not err in sustaining Lautenbaugh's demurrer and dismissing the action with prejudice.

AFFIRMED.