STEVEN M. JACOB, APPELLANT, V.
STATE OF NEBRASKA ET AL., APPELLEES.
685 N.W.2d 88

Filed August 3, 2004.   No. A-02-1096.

Steven M. Jacob, pro se.

Jon Bruning, Attorney General, and Maureen Hannon for appellees.

Inbody, Carlson, and Moore, Judges.

Moore, Judge.

## INTRODUCTION

Steven M. Jacob, an incarcerated individual, filed in the district court for Lancaster County a petition for declaratory and injunctive relief, wherein he alleged that 2001 Neb. Laws, L.B. 85, was enacted in violation of article III, § 14, of the Nebraska Constitution. The district court found that Jacob lacked standing to bring the action, and the court dismissed his petition. Jacob appeals from the court's order denying his subsequent motion to alter or amend the judgment. For the reasons set forth herein, we affirm.

## BACKGROUND

On October 29, 2001, Jacob, an inmate at the Nebraska State Penitentiary serving a life sentence, filed a petition for declaratory and injunctive relief, naming the State of Nebraska, its Governor, and its Attorney General as defendants (collectively the Appellees). Jacob alleged that L.B. 85 (1) was a bill containing more than one subject, (2) was not before the Legislature for 5 days prior to final passage, (3) did not clearly express in its title that it provided for fines and penalties, and (4) amended Neb. Rev. Stat. § 73-301 et seq. (Reissue 2003) without so stating, all in violation of article III, § 14, of the Nebraska Constitution. L.B. 85, as enacted, is now found at Neb. Rev. Stat. §§ 47-801 through 47-807 (Cum. Supp. 2002) and is entitled the Private Prison Contracting Act. Such act authorizes the Department of Correctional Services (the Department) "to provide for incarceration, supervision, and residential treatment at facilities other than those operated by the Department" and "to contract for the operation of correctional institutions of the [D]epartment by private prison contractors." § 47-802(1) and (2).

In response to Jacob's petition, the Appellees, in their official capacities, filed an answer wherein they raised the issue of standing. The Governor and the Attorney General filed a demurrer in their individual capacities. Jacob and the Appellees, in their official capacities, both filed motions for summary judgment.

The court heard the parties' motions on March 26 and April 15, 2002. The parties offered as exhibits various legislative histories and similar documents, which items were received into evidence by the court.

The district court entered an order on August 1, 2002, finding that Jacob lacked standing to sue in this matter and dismissing his petition. The court noted that pursuant to L.B. 85, the Department contracted with Correctional Medical Services (CMS) to provide medical care to inmates housed at the Tecumseh State Correctional Institution. The court noted Jacob's assertion that the contract with CMS obligated CMS to provide services which are only " 'reasonable and humane,' " in contrast to the Department's statutory obligation to provide inmates with health care services that meet the standard of care in the community. The court also noted Jacob's assertion that L.B. 85 was being used by the Department to circumvent the protections of Nebraska law that guarantee him a higher standard of medical care. Finally, the court noted Jacob's assertions that he could be transferred to the Department's Tecumseh facility, that he has needed medical services in the past, and that he undoubtedly will need them again in the future.

The court reviewed the requirements necessary to establish standing and the exceptions thereto. The court found that Jacob had neither alleged nor offered proof of any injury peculiar to him and distinct from that of the public generally. As to the public interest exception to the standing rule, the court found that the matter raised in Jacob's petition was not one of great public interest. The court further found that the inmates housed at the Tecumseh facility were more appropriately entitled to present the claim set forth in Jacob's petition than was Jacob on their behalf. As to the exception allowing taxpayers to challenge the constitutionality of statutes that involve the expenditure of public funds or an increase in the burden of taxation, the court concluded that public funds would be expended to pay CMS under a contract

entered pursuant to L.B. 85 and that if L.B. 85 were unconstitutional, such expenditure would be illegal. The court noted Jacob's application to proceed in forma pauperis, wherein Jacob stated that he owned no property and earned no more than $1,384 per year. The court concluded that for standing purposes, while Jacob may pay sales tax on purchases from the prison commissary or private vendors, that fact did not confer upon him the status of taxpayer. In reaching this conclusion, the court relied on *Stumes v. Bloomberg*, 551 N.W.2d 590 (S.D. 1996), which we further discuss below. Because standing is a jurisdictional prerequisite to maintaining an action, the court found that it had no authority to consider the parties' motions for summary judgment or the demurrer filed by the Governor and the Attorney General in their individual capacities. The court dismissed Jacob's petition.

Jacob filed a timely motion to alter or amend the judgment. Jacob asserted that the district court erred in relying on *Stumes v. Bloomberg, supra,* as a basis for finding that Jacob did not have standing, because of fundamental differences between the Nebraska sales tax statutes and the South Dakota statutes relied on by the South Dakota Supreme Court in *Stumes*. Specifically, Jacob asserted that in Nebraska, unlike in South Dakota, the consumer, rather than the retailer, is the taxpayer for purposes of the sales tax statutes.

On September 5, 2002, the district court entered an order denying Jacob's motion. The court again found that Jacob had suffered no direct injury by the passage of L.B. 85 or by the subsequent contract with CMS and that even if the matter Jacob set forth in his petition was one of great public interest, there were other persons better suited to bring the claim. The court agreed with Jacob's assertion that in Nebraska the consumer, rather than the retailer, is the taxpayer of sales tax. The court did not conclude, however, that this difference was sufficient to grant Jacob standing under the taxpayer exception. The court stated as follows:

> The theory which has led courts to grant standing to taxpayers in cases which challenge the expenditure of public money is that a taxpayer has such an individual and common interest in public funds as to entitle him [or her] to maintain an action to prevent their unauthorized appropriation. The question is whether the payment of sales tax creates such an

interest. It seems to me that it does not. What about the individual driving from New York to California who stops to buy a candy bar in Grand Island? Does [that person] have standing? How about the person in Montana who orders some cold weather gear from Cabelea's [sic]? Does [that person] have standing? The answer is obviously not.

The court found that the fact that Jacob pays sales tax on some purchases from the prison commissary or other Nebraska retailers is not sufficient to grant him standing. Jacob subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Jacob asserts that the district court erred in finding that he lacked standing to challenge the constitutionality of L.B. 85 and in not permitting him to amend his petition.

## STANDARD OF REVIEW

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003).

## ANALYSIS

*Standing.*

■ Jacob asserts that the district court erred in finding that he lacked standing to challenge the constitutionality of L.B. 85. In order for a party to establish standing to bring suit, it is necessary to show that the party is in danger of sustaining direct injury as a result of anticipated action, and it is not sufficient that one has merely a general interest common to all members of the public. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002). Jacob apparently concedes that he has not suffered a direct injury because of the passage of L.B. 85, but he claims that he is entitled to bring this action because certain exceptions to the standing requirements are applicable. An exception allowing standing exists where matters of great public concern are involved and a legislative enactment may go unchallenged unless the plaintiff has the right to bring

the action. *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000). See, also, *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999) (threshold question is whether there exists another party whose interests are more at issue in action). A person seeking to restrain the act of a public board or officer must show special injury peculiar to himself or herself aside from and independent of the general injury to the public unless it involves an illegal expenditure of public funds or an increase in the burden of taxation. *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002); *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn., supra.* A resident taxpayer, without showing any interest or injury peculiar to itself, may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. *Chambers v. Lautenbaugh, supra.* In an action involving the illegal expenditure of public funds or an increase in the burden of taxation, the plaintiff must be a taxpayer of the governmental body. *City of Elkhorn v. Duncan*, 252 Neb. 666, 565 N.W.2d 726 (1997). We proceed to discuss both of these exceptions separately below.

*Public Concern Exception.*

With regard to the public concern exception, Jacob argues that the issues of private prison contracting and inmate medical care are issues of great public concern. However, for this exception to apply, L.B. 85 must involve a matter of great public concern and there must exist the risk that its enactment would otherwise go unchallenged unless Jacob were allowed to bring this action. See *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn., supra.* The district court focused on the second factor and found that the issue raised in Jacob's petition did not extend "beyond the interest of those individuals needing medical care who are in the custody of the Department and housed at Tecumseh." The Nebraska Supreme Court has discussed the fact that standing is granted in certain cases because of the concern that judicial review would not otherwise occur. See *Ritchhart v. Daub, supra.* In that case, the Supreme Court noted that in determining whether to grant standing in such cases, " ' "[c]onsideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or *the*

*existence of other persons better situated to assert the claim.*" ' "
(Emphasis in original.) *Ritchhart v. Daub*, 256 Neb. at 808, 594
N.W.2d at 293. We agree with the district court's assessment that
the claim presented by Jacob in the present case would be more
appropriately advanced by the inmates of the Department's
Tecumseh facility or those housed at some other Department
facility subject to a contract signed pursuant to L.B. 85 as
enacted. Jacob cannot be afforded standing on the theory that the
interests of the public would otherwise go unprotected.

*Taxpayer Exception.*

In its order of August 1, 2002, the district court relied on
*Stumes v. Bloomberg*, 551 N.W.2d 590 (S.D. 1996), to find that
Jacob's payment of sales tax on purchases from the prison com-
missary or private vendors did not grant him taxpayer standing.
In *Stumes*, 551 N.W.2d at 592, the South Dakota Supreme Court
considered the question of whether a prisoner—under the excep-
tion, judicially created to protect a public right, allowing "tax-
payers" and "electors" standing without demonstrating a special
interest in the action—was a taxpayer with standing to challenge
the constitutionality of a special appropriations bill.

The prisoner in *Stumes* was unemployed during the proceed-
ings, had no assets, and carried a negative balance in his prison
spending account. But he was charged a sales tax on items pur-
chased from the inmate commissary system or from a local busi-
ness. On appeal, the South Dakota Supreme Court referenced the
South Dakota sales tax statutes, which statutes impose a tax upon
the privilege of engaging in business as a retailer, which tax may
be passed along to the consumer. See S.D. Codified Laws
§§ 10-45-2 and 10-45-22 (Michie 1996). The court concluded that
under the South Dakota statutory scheme, the mere payment of
sales tax by a consumer did not fit within the definition of a tax-
payer. The court further found that because the taxpayer standing
exception was judicially created, it was within the power of the
court to limit its meaning. The court reasoned that lawful impris-
onment necessarily makes unavailable many rights and privileges
of the ordinary citizen and concluded that the inmate in that case,
by his conviction and incarceration, had forgone his constitutional
right as a taxpayer when the door closed at the penitentiary. The

*Stumes* court acknowledged that by becoming a prisoner, the inmate had not left behind all of his constitutional rights, but the court concluded that incarcerated individuals should not be " 'litigating engines' " in the taxpayer standing arena. 551 N.W.2d at 594, citing *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). The court then affirmed the trial court's decision, finding that the inmate did not have standing. A concurring opinion in *Stumes v. Bloomberg, supra*, noted that "it would be illogical and inconsistent to permit someone who has no right to vote for legislators to challenge a general legislative act." 551 N.W.2d at 595.

In the present case, Jacob asserted in his motion to alter or amend the district court's judgment of August 1, 2002, that the court erred in relying on *Stumes v. Bloomberg, supra*, because of fundamental differences between the Nebraska sales tax statutes and the South Dakota sales tax statutes. Jacob relies on *Governors of Ak-Sar-Ben v. Department of Rev.*, 217 Neb. 518, 349 N.W.2d 385 (1984), wherein the Nebraska Supreme Court noted that the language of Nebraska's sales tax statutes clearly states that the purchaser must pay the tax on the cost of his or her purchase to the retailer. See Neb. Rev. Stat. § 77-2703 (Reissue 2003). In South Dakota, the tax is imposed on the retailer, who may then pass it along to the consumer.

The Nebraska sales tax scheme appears to be similar to that of Texas. In *Williams v. Lara*, 52 S.W.3d 171 (Tex. 2001), the Texas Supreme Court considered the question of whether the payment of sales tax was sufficient to confer taxpayer standing. In that case, a former inmate claimed that she had taxpayer standing by virtue of her payment of sales tax. The former inmate sought taxpayer standing to sue the county and its sheriff for allegedly running an unconstitutional religious-education program at the county jail. The Texas court noted that taxpayers fall under a limited exception to the general standing rule and that taxpayers in Texas have standing to enjoin the illegal expenditure of public funds without demonstrating a particularized injury. The court stated that "[i]mplicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity." *Id.* at 179. The former inmate seeking taxpayer standing in that case

did not own property and thus did not pay property taxes. The Texas court noted that other jurisdictions have held that merely paying sales tax does not confer taxpayer standing under statutes that impose a sales tax on the seller of goods rather than the purchaser. The Texas court also noted that such other jurisdictions have reasoned that although a retailer may pass the sales tax cost along to the purchaser, payment of sales tax does not make a purchaser a taxpayer for purposes of standing. The *Williams* court found that Texas characterized its state sales tax differently than these other jurisdictions in that both sellers and purchasers are considered taxpayers under Texas law.

Despite this distinction, the Texas court was not persuaded that paying sales tax should be grounds for conferring taxpayer standing. The Texas court noted, as did the South Dakota court in *Stumes v. Bloomberg*, 551 N.W.2d 590 (S.D. 1996), that taxpayer standing is a judicially created exception to the general standing rule and that the court had already limited the applicability of the exception by narrowly defining the type of action a taxpayer could maintain. The *Williams* court stated:

> Extending taxpayer standing to those who pay only sales tax would mean that even a person who makes incidental purchases while temporarily in the state could maintain an action. This would eviscerate any limitation on taxpayer suits. It would allow a person with virtually no personal stake in how public funds are expended to come into court and bring the government's actions under judicial review. This is not what this [c]ourt envisioned in crafting the taxpayer-standing exception.

52 S.W.3d at 180. The court accordingly held, "for prudential reasons," that paying sales tax does not confer taxpayer standing on a party. *Id.*

In the present case, the district court employed similar reasoning in its September 5, 2002, order ruling on Jacob's motion to alter or amend the judgment. Jacob, however, urges that the reasoning employed by the Texas court in *Williams v. Lara, supra,* and by the district court in the present case (regarding the payment of sales tax by nonresidents making purchases while temporarily in the state) is obviated by the requirement that taxpayer standing in Nebraska is granted to "resident taxpayers."

See, *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993) (standing of party to bring action must be based on special injury to himself or herself or on his or her status as resident taxpayer); *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985). Jacob argues that he does not lose his status as a resident of Nebraska because of incarceration and that thus, he should be considered a "resident taxpayer" for standing purposes by virtue of his payment of sales tax and his residency in the State of Nebraska.

We note that the basic proposition setting forth the taxpayer exception to the standing rule does not employ the phrase "resident taxpayer." See *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002) (stating that person seeking to restrain act of public board or officer must show special injury peculiar to himself or herself aside from and independent of general injury to public unless it involves illegal expenditure of public funds or increase in burden of taxation). The phrase "resident taxpayer" seems to be employed more frequently in cases involving illegal expenditures of public funds. See *id.* (stating that resident taxpayer, without showing any interest or injury peculiar to itself, may bring action to enjoin illegal expenditure of public funds raised for governmental purposes). However, a careful perusal of Nebraska law shows that the phrase "resident taxpayer" has been used in connection with both aspects of the taxpayer exception, that is to say, both the illegal expenditure of public funds and an illegal increase in the burden of taxation. See *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth., supra* (plaintiff who was resident taxpayer had standing to bring resident taxpayer's action as representative of municipality for illegal expenditure of public funds or illegal increase in burden of taxation). We conclude, however, that neither the apparent addition of the word "resident" to the requirements of the taxpayer exception in Nebraska nor the differences between the Nebraska and South Dakota sales tax statutes compel a different result in the present case than was reached by the district court in this case or the courts in *Stumes v. Bloomberg*, 551 N.W.2d 590 (S.D. 1996), and *Williams v. Lara*, 52 S.W.3d 171 (Tex. 2001). Under the facts of the present case, we conclude that Jacob, as an incarcerated individual who owns

no property and pays only limited sales tax on purchases from the prison commissary or private vendors, does not have standing under the exception allowing taxpayers to make challenges to an alleged illegal expenditure of public funds or an increase in the burden of taxation.

We are mindful of the fact that prisoners must be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration. *Meis v. Grammer,* 226 Neb. 360, 411 N.W.2d 355 (1987). However, just because prison inmates retain certain constitutional rights does not mean that these rights are not subject to limitation. *State v. Weikle,* 223 Neb. 81, 388 N.W.2d 110 (1986). The taxpayer standing exception was judicially created in Nebraska, and it is within our power to limit its meaning. We agree that incarcerated individuals should not be " 'litigating engines' " in the taxpayer standing arena. See *Stumes v. Bloomberg,* 551 N.W.2d at 594, citing *Lewis v. Casey,* 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). We decline to extend the resident taxpayer exception to those incarcerated individuals who, like Jacob, own no property and pay sales tax only on a limited basis. Our holding in no way limits the ability to challenge the constitutionality of a statute by those prisoners who have a direct interest or who are better suited under the public interest exception than was Jacob in the present case, or even those prisoners who bear a different tax burden than does Jacob. Additionally, by our holding, we make no ruling on the question of whether a nonincarcerated individual, who resides in Nebraska and pays only sales tax, might have standing under the taxpayer exception. That question was not presented in the instant appeal, and an appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Anderson v. Bellino,* 265 Neb. 577, 658 N.W.2d 645 (2003).

*Amendment of Petition.*

Jacob asserts that the district court erred in not permitting him to amend his petition. The Nebraska Supreme Court has stated that if, upon the sustainment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. *Harsh*

*International v. Monfort Indus.*, 266 Neb. 82, 662 N.W.2d 574 (2003). In the present case, the district court did not reach either the demurrer or the motions for summary judgment because it found that Jacob lacked standing. No amendment to Jacob's petition can create standing where none exists. Jacob's assignment of error is without merit.

## CONCLUSION

The district court did not err in finding that Jacob lacked standing to challenge the constitutionality of L.B. 85, and it did not err in not permitting Jacob to amend his petition.

AFFIRMED.